*In re* REISMAN ESTATE

Docket No. 252172. Submitted May 3, 2005, at Detroit. Decided May 24, 2005, at 9:30 a.m.

Shelley N. Paine and E. Michael Reisman, two surviving children of Samuel G. Reisman, deceased, petitioned the Oakland County Probate Court to determine the validity of the decedent's testamentary exercise of a limited power of appointment granted to him in a marital trust created by his deceased wife, Geraldine Reisman. The limited power of appointment, exercisable only by the will of Samuel Reisman and only by specific reference to such power, empowered Samuel Reisman to appoint the entire principal and income to Geraldine Reisman's descendants and subject to any conditions, trusts, and restrictions as may be determined by Samuel Reisman. In the third codicil to his will, Samuel Reisman provided that if he were survived by the petitioners, the limited power of appointment would be exercised by appointing all the property to the trustee of his revocable living trust. Samuel Reisman's revocable living trust and the third codicil to his will provided that if the petitioners survived him, the petitioners would be treated as if they had predeceased Samuel Reisman and the property that would have been distributed into issue trusts for the petitioners would instead be distributed to the petitioners' children. The court, Barry M. Grant, J., determined that the limited power of appointment designated the permissible appointee to be a class of people consisting of Geraldine's children and their descendents. The court invalidated the exercise of the power of appointment, concluding that by appointing the property to the trustee of his own revocable living trust, or to his own estate, Samuel Reisman exercised a general power of appointment rather than the limited power of appointment specified in Geraldine's revocable living trust. The respondent, Jack Kaufman, personal representative of the estate of Samuel Reisman, appealed.

The Court of Appeals *held*:

The probate court erred when it failed to give effect to Samuel Reisman's wishes because Samuel Reisman properly and effectively exercised the power of appointment granted to him in the trust created by Geraldine Reisman, but the court correctly

determined that the power of appointment was a special power of appointment—a power exercisable only in favor of one or more people not including the donee, Samuel Reisman, his estate, his creditors, or the creditors of his estate. The recipients of Samuel Reisman's trust, through which the appointable assets passed, were issue trusts benefiting only members of the class delineated by Geraldine Reisman's grant of the power of appointment. That the trustee named by Samuel Reisman is not a member of the class of beneficiaries contemplated in Geraldine Reisman's grant does not defeat Samuel Reisman's exercise of that power. The trustee was under Samuel Reisman's instruction in his revocable living trust to segregate the assets from his estate and was forbidden from using the assets for anything other than distribution to Geraldine Reisman's descendents with the exception of the petitioners. Pursuant to Samuel Reisman's trust, the assets did not benefit his estate or his creditors, and they were not available to pay trust expenses.

Reversed and remanded for further proceedings.

TRUSTS — SPECIAL POWERS OF APPOINTMENT — DONEE'S REVOCABLE LIVING TRUST.

The assets given through a special power of appointment may be distributed through the trustee of the donee's revocable living trust if those assets are ultimately distributed to the donor's specified beneficiaries and if those assets are sufficiently segregated so they do not benefit the donee's trust, the donee's estate, or the donee's creditors, and they are not used to pay the expenses of the donee's trust (MCL 556.112[i], 556.115[2]).

*Butzel Long* (by *Michael P. Witzke* and *Amy L. Glenn*) for Shelley N. Paine and E. Michael Reisman.

*Warner Norcross & Judd LLP* (by *John H. Martin* and *John J. Bursch*) and *Ishbia & Gagleard, P.C.* (by *Michael J. Weisberg*), for Jack Kaufman.

Before: MURPHY, P.J., and WHITE and SMOLENSKI, JJ.

SMOLENSKI, J. Respondent Jack Kaufman, the personal representative of Samuel Reisman's estate, appeals as of right from an opinion and order holding that Samuel Reisman's exercise of a limited power of ap-

pointment granted to him in a marital trust was invalid. We reverse and remand. This case is being decided without oral argument pursuant to MCR 7.214(E).

## I. BASIC FACTS AND PROCEDURAL HISTORY

Geraldine G. Reisman established a revocable living trust, which in part created a marital trust for the benefit of her husband, Samuel Reisman.[1] In the marital trust, Geraldine provided:

> Upon the death of [Samuel], . . . [he] shall have a limited power of appointment, exercisable only by the Last Will and Testament of [Samuel] and only by specific reference to such power, to appoint the entire principal and undistributed income . . . to a class of persons consisting of [Geraldine's children] and the descendents of [Geraldine's children] and subject to any conditions, trusts and restrictions as may be determined by [Samuel].

In the third codicil to his last will and testament, Samuel provided that if he were survived by two of his five children, petitioners E. Michael Reisman and Shelley Naomi Paine, he was exercising the power of appointment by appointing all the property to the trustee of his revocable living trust, and directing that it be distributed pursuant to § 5 of his trust. Further, he provided:

> It is my intention that the property appointed by me under this Section shall not be an asset of my probate estate, or be subject to administration by the personal representative of my will, or otherwise be treated for any purpose as if it were an asset of my probate estate.

Section 5 of Samuel's revocable trust provided for distribution into issue trusts for his surviving children

---

[1] Both Geraldine and Samuel executed substantially similar amended and restated revocable living trust agreements on May 5, 2000.

and, on a per capita basis, to descendants of his deceased children. However, concurrent with his third codicil, Samuel executed the sixth amendment to his revocable living trust, which amended § 5 to state that if petitioners, but not their living descendants, survived him, petitioners should be treated as having predeceased him. Thus, the effect of the third codicil and the amendment of § 5 of the trust were to bypass petitioners in favor of petitioners' children.

Petitioners challenged Samuel's exercise of the power of appointment.[2] The probate court held that Geraldine had granted Samuel a special limited power of appointment, as defined in MCL 556.112(i), and not a general power of appointment, as defined in MCL 556.112(h). The court further held that the limited power of appointment designated the permissible appointee to be a class of persons consisting of Geraldine's children and their descendants, and that "by appointing the property to the Trustee of his own revocable living trust, or his own estate, rather than to the limited class specified in Geraldine['s] Revocable Living Trust," Samuel had exercised a general power of appointment. The court concluded that the exercise of the power of appointment was invalid.

---

[2] When a power of appointment fails to exercise effectively, the interests that might have been appointed pass in accordance with an express gift in default, if one exists. MCL 556.122(a). Section 3D of Geraldine's revocable living trust provided that, "To the extent that said limited power of appointment shall not be effectively exercised, the principal and undistributed income, if any, of the Marital Trust shall be distributed pursuant to Section 5 hereof . . . ." Section 5 of Geraldine's trust calls for the creation of issue trusts identical to § 5 of Samuel's trust before his sixth amendment, which required the trustee to treat petitioners as though they had predeceased Samuel. Hence the practical effect of petitioners' challenge, if successful, would be to render Samuel's attempts to bypass petitioners nugatory, at least with regard to the assets of Geraldine's marital trust.

## II. STANDARDS OF REVIEW

This Court reviews de novo the proper interpretation of statutes such as the Powers of Appointment Act of 1967.[3] *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 157; 627 NW2d 247 (2001). In addition, this Court reviews de novo the language used in wills and trusts as a question of law. *In re Bem Estate*, 247 Mich App 427, 433; 637 NW2d 506 (2001).[4]

## III. CONSTRUCTION OF STATUTES, WILLS, AND TRUSTS

Because this case involves the construction of statutes, wills, and trusts, we shall briefly state the applicable standards.

This Court begins the interpretation of a statute by examining the language of the statute itself. *Macomb Co Prosecutor, supra* at 158. The statute should be read in context to determine if an ambiguity exists. *Id.* If the language is not ambiguous, judicial construction is precluded and the statute will be enforced as written. *Id.* Where ambiguity exists, "this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished." *Id.* An act must

---

[3] MCL 556.111 *et seq.*

[4] Petitioners contend that the probate court made an implicit finding of fact when it determined that Samuel improperly appointed Geraldine's marital trust property to the trustee of his own revocable living trust or his own estate. This finding, petitioners argue, must be reviewed for clear error. While it is true that the probate court's findings of fact are reviewed for clear error, see *In re Estes Estate*, 207 Mich App 194, 208; 523 NW2d 863 (1994), the probate court made no such finding in this case. The probate court examined the language of Samuel's will and determined the legal effect of that language in light of the applicable law and Geraldine's grant of the appointment power. Consequently, we review de novo the probate court's determination of the legal effect of the language in Samuel's will. *In re Bem Estate, supra* at 433.

be construed "as a whole to harmonize its provisions and carry out the purpose of the Legislature." *Id.* at 159.

"A fundamental precept which governs the judicial review of wills is that the intent of the testator is to be carried out as nearly as possible." *In re Allen Estate*, 150 Mich App 413, 416; 388 NW2d 705 (1986), citing *In re Kremlick Estate*, 417 Mich 237, 240; 331 NW2d 228 (1983). Where there is no "patent or latent ambiguity in the provisions of a will, the intention to be ascribed to the testator is that intention demonstrated in the will's plain language." *In re Dodge Trust*, 121 Mich App 527, 542; 330 NW2d 72 (1982), quoting *In re Willey Estate*, 9 Mich App 245, 249; 156 NW2d 631 (1967).[5] Furthermore, "[a] court may not construe a clear and unambiguous will in such a way as to rewrite it," *In re Allen Estate, supra* at 417, and, where possible, each word should be given meaning, *Detroit Bank & Trust Co v Grout*, 95 Mich App 253, 268-269; 289 NW2d 898 (1980). The rules of construction applicable to wills also apply to the interpretation of trust documents. *In re Maloney Trust*, 423 Mich 632, 639; 377 NW2d 791 (1985) (opinion by CAVANAGH, J.).

IV. THE POWER OF APPOINTMENT

A power of appointment is "a power created or reserved by a person having property subject to his

---

[5] This Court defined patent and latent ambiguity in *In re Woodworth Trust*, 196 Mich App 326, 327-328; 492 NW2d 818 (1992):

A patent ambiguity exists if an uncertainty concerning the meaning appears on the face of the instrument and arises from the use of defective, obscure, or insensible language. [*In re Norwood Estate*, 178 Mich App 345, 347-348; 443 NW2d 798 (1989).] A latent ambiguity exists where the language and its meaning is [sic] clear, but some extrinsic fact creates the possibility of more than one meaning. *Id.* at 348.

disposition which enables the donee of the power to designate, within any limits that may be prescribed, the transferees of the property or the shares or the interests in which it shall be received; but it does not include a power of sale, a power of attorney or a power of amendment or revocation." MCL 556.112(c). The donor is the person who creates the power of appointment and the donee is the recipient of the power. MCL 556.112(d), (e). Hence, when a donor grants a donee power of appointment over certain specified property, the donee gains the right to specify who will receive that property.

Powers of appointment are broken into two types: general powers and special powers.[6] A general power is "a power exercisable in favor of the donee, his estate, his creditors or the creditors of his estate, whether or not it is exercisable in favor of others." MCL 556.112(h). A special power is "a power exercisable only in favor of 1 or more persons not including the donee, his estate, his creditors or the creditors of his estate." MCL 556.112(i).[7] In addition, a donor may place conditions upon the exercise of an appointment, which must be complied with in order to effectively exercise the power. MCL 556.115(2).

In the present case, Geraldine's revocable living trust created a marital trust at her death, which in turn had

---

[6] These classifications are important because a grant of a general power of appointment subjects the assets over which the power exists to the claims of the donee's creditors, MCL 556.123, and may cause the assets to be included in the donee's estate upon his or her death, MCL 556.116. Likewise, the exercise or release of a general power of appointment is a taxable event, 26 USC 2514(b), whereas the exercise of a special power of appointment is generally not a taxable event. *Jewett v Internal Revenue Comm'r*, 455 US 305, 317-318; 102 S Ct 1082; 71 L Ed 2d 170 (1982).

[7] Throughout this opinion we shall use "special," "limited," and "non-general" to refer to the power of appointment defined by MCL 556.112(i).

a clause granting Samuel "a limited power of appointment," over the assets remaining in the marital trust, which could only be exercised in his will and only by specific reference to the power. The power also stated that Samuel could only distribute the assets to Geraldine's children and their descendents, but that the distributions could be "subject to any conditions, trusts and restrictions as may be determined by [Samuel.]" Consequently, under MCL 556.112(i) and the plain language of the trust agreement, Samuel had a special power of appointment with the additional limitations that it could only be effectively exercised in his will and that it must specifically refer to the grant of power.

Samuel exercised the special power of appointment granted by Geraldine by way of the third codicil to his will. The relevant portion stated:

> Under Section 3 of the Geraldine G. Reisman Revocable Living Trust Agreement dated February 12, 1987 executed by my wife as Settlor and Initial Trustee, as amended, of which Jack Kaufman and I now are Trustees, a separate trust named the Marital Trust was created at my spouse's death. Under Section 3D of that trust agreement, I am given testamentary power of appointment as to all property constituting the Marital Trust at the time of my death. If my son, Elliot Michael Reisman, or my daughter, Shelley Naomi Paine, survives me, I hereby exercise that power by appointing all property over which I have power of appointment under that Section 3D to the then acting Trustee(s) of the Revocable Trust referred to in Section 4A of this Last Will and Testament, to be distributed pursuant to Section 5 thereof.

Thus, as required by Geraldine's marital trust, Samuel exercised the power of appointment through his will and by specific reference to the power. However, Samuel's exercise of the special power of appointment does

not, on its face, appear to distribute the marital trust assets to the class of transferees specified in Geraldine's revocable living trust.[8] Instead, the appointment transfers the assets of the marital trust to the then-acting trustee of his own revocable living trust, subject to the condition that the trustee distribute the assets according to the terms stated in § 5 of Samuel's revocable living trust. Section 5 of Samuel's living trust, as amended, creates issue trusts for each of his children or their heirs, if they should predecease him, and distributes the assets of the marital trust to those trusts equally. As amended, this section treats petitioners as though they had predeceased Samuel. Notwithstanding that, the recipients of the issue trusts are all members of the class delineated in Geraldine's grant of the power. Hence, as a preliminary matter, we must address whether Samuel could effectively exercise his special power of appointment by transferring the marital trust assets to an individual, who was not a member of the specified class of possible recipients, with instructions that that individual distribute those assets to members of the class according to specified terms.[9]

---

[8] By its plain language, this transfer did not pass any interest in the marital trust property to Samuel or his estate. Furthermore, Samuel clarified that it was his intention that the marital trust assets not be "an asset of my probate estate, or be subject to administration by the personal representative of my will, or otherwise be treated for any purpose as if it were an asset of my probate estate." Consequently, to the extent that the probate court determined that Samuel improperly exercised his power of appointment by transferring the marital trust assets to his estate, the probate court clearly erred.

[9] We note that, where a power of appointment permits the donee of the power to transfer the assets to a specified class, unless otherwise stated in the grant of the power, the donee may specifically exclude some members of the class from the distributions. MCL 556.117. Because the grant of power to Samuel created a class and did not restrict Samuel's power to exclude any member of that class, Samuel could properly exclude petitioners from receiving distributions.

Although the Powers of Appointment Act of 1967 does not directly answer this question, it does state that, "[a]s to all matters not within this act or any other applicable statute, the common law is to govern." MCL 556.129. Because there are no Michigan authorities directly addressing this question, we turn to the Restatement Property, 2d. According to 2 Restatement Property (Donative Transfers), 2d (rev), § 19.3, p 296:

> Unless the donor has manifested a contrary intent, a donee of a non-general power is permitted to make any appointment that benefits only objects of the power that the donee could make of owned property in favor of those objects.

Absent a restriction placed on the limited power of appointment by Geraldine, Samuel could exercise the power in favor of the members of the class in any way that he could have had he owned the property, including through the use of a trust.[10] Indeed, Geraldine specifically stated in her grant of power to Samuel, that the power was "subject to any conditions, *trusts* and restrictions as may be determined by [Samuel]." (Emphasis added.) Furthermore, the fact that the trustee named by Samuel is not a member of the class of beneficiaries contemplated in Geraldine's grant of the power will not defeat Samuel's exercise of that power. See 2 Restatement Property (Donative Transfers), 2d (rev), § 20.1, p 312.[11] Therefore, the fact that Samuel effected the

---

[10] This is consistent with the previous restatement of the rule, which specifically permitted the donee to appoint interests to trustees for the benefit of objects. See 3 Restatement Property, § 358, p 1976.

[11] Section 20.1 states, "If the donee appoints a beneficial interest to a non-object, the appointment is ineffective." However, comment e clarifies that

> [t]he donee of a power to appoint may make an appointment in trust for the benefit of the objects of the power unless the donor

transfer by way of a trust does not by itself constitute an invalid exercise of the power. Of course, the fact that Samuel could effect the transfer through a trust does not necessarily mean that he could do so through his own revocable living trust.

Petitioners argue that, notwithstanding the fact that Samuel could exercise the power by way of a trust, the transfer of the marital trust assets to his revocable living trust had the effect of benefiting his own estate and creditors and exposed the marital trust assets to expenses incurred in the operation of the revocable living trust as well as potentially adverse tax consequences. The exposure of the marital trust assets to these potential liabilities, petitioners contend, constitutes a transfer to the benefit of persons outside of the class delineated by Geraldine. We disagree.

When Samuel exercised his power of appointment, he specifically transferred the marital trust property to the trustee of his revocable living trust with instructions that those assets were not to become part of his estate, but were to be distributed pursuant to § 5 of his trust. This language effectively stripped the trustee of any authority to utilize those particular assets for anything other than distribution pursuant to that section. Petitioners' argument that other sections of Samuel's trust would allow the trustee to utilize the marital trust assets for administrative or estate expenses is simply without merit. Furthermore, the marital trust assets cannot be invaded by third parties for the payment of administration expenses, for payment of claims against

has manifested an intent to exclude appointments in trust (see § 19.3). An appointment in trust will necessarily involve a direct appointment to a non-object unless an object is the trustee. The appointment to a trustee who is a non-object, however, will not give the non-object a beneficial interest and hence is not prohibited by the rule of this section.

Samuel's estate, or for the payment of an allowance. MCL 700.7501(4). Therefore, Samuel's exercise of the power through his trust did not benefit his estate or creditors and the assets were not available to pay trust expenses.[12]

Likewise, petitioners' argument that Samuel's exercise of the power fails because it subjected the marital trust assets to possible adverse tax consequences is without merit. Petitioners' argument is purely speculative and unsupported by citation to authority. Therefore, petitioners have waived this argument on appeal. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Even if petitioners had not waived this argument, we would reject petitioners' argument. The potential for adverse tax consequences attaches to every transfer of property no matter how well structured, and, therefore, absent clear language in the grant of power instructing the donee to avoid certain tax consequences, we would not place such a limitation on the exercise of a power of appointment.[13]

---

[12] Even if the marital trust assets could be invaded to pay trust expenses, we do not believe that it would affect the outcome. When Geraldine created the power of appointment, she specifically permitted Samuel to subject the transfer to trusts, and, therefore, she must have understood that by permitting such a transfer, the assets transferred would be subject to administrative expenses. Hence, under the language creating the power, trust expenses were permissible.

[13] We also note that § 5 of Samuel's revocable living trust specifically instructs the trustee to create the issue trusts subject to the terms of § 14, which deals with tax planning. This section is identical to Geraldine's § 14, which would otherwise govern the distribution of the marital trust assets.

## V. CONCLUSION

Samuel properly and effectively exercised the power of appointment granted to him by Geraldine in her revocable living trust, and, therefore, the probate court erred when it failed to give effect to his wishes. We reverse the decision of the probate court and remand for further proceedings consistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.