*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RAYMOND J. RECH LIVING TRUST.

---

JENNIFER LANGREET and MICHAEL
ROCHELEAU,

        Appellees,

v

HEIDI AULL, Successor Trustee,

        Appellant.

UNPUBLISHED
July 14, 2022

No. 358754
Macomb Probate Court
LC No. 2021-236162-TV

---

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Raymond Rech created a trust with conflicting provisions as to the distribution of proceeds upon the death of Alma Rocheleau, one of four beneficiaries. In resolving the ambiguity, the probate court ordered distribution of the proceeds to Alma's heirs. The probate court improperly discounted an affidavit from the attorney who drafted Rech's estate plan, which stated that Rech intended Alma's remaining proceeds to be distributed upon her death to the other beneficiaries— three charities. The court also misapplied the rules of construction to the language of the trust. Accordingly, we reverse and remand for entry of an order distributing the proceeds to the charities.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the Raymond J. Rech Living Trust (the Trust), created in October 2003 and amended and restated in July 2016 by Rech. Article Seven, Section 1 of the Trust lists four beneficiaries: Rech's sister, Alma Rocheleau; San Francesco Church of Clinton Township, Michigan; Pime Missionaries of Detroit, Michigan; and St. Jude Children's Research Hospital of Memphis, Tennessee. This section also states that upon Rech's death, "all trust property not previously distributed under the terms of the trust shall be divided into separate trusts," with trust shares equally divided among the four beneficiaries. Article Seven, Section 1 further provides that "[e]ach trust share established under this Section 1 shall be named for the beneficiary for whom

-1-

established and shall be held, administered, and distributed in accordance with the relevant provisions of Section 2 of this Article."

Section 2 of Article Seven states, in relevant part: "Upon the death of Alma O. Rocheleau, any part of the trust property still held in trust shall be distributed to the other beneficiaries named in Section 1 above as the Grantor has provided for them." However, Section 3 of Article Seven states:

> Each trust established for a deceased beneficiary shall be held, administered, and distributed as follows: . . .
>
> [T]he Trustee shall distribute the trust established for a deceased beneficiary to the then living descendants, per stirpes,[1] of such deceased beneficiary." [2]

Rech passed away on March 23, 2019, and Alma passed away on September 17, 2020. In December 2020, appellees, Alma's grandchildren and heirs, petitioned the probate court for "instruction on their possible beneficiary status," arguing that they stood to inherit Alma's share of the Trust under Section 3. Appellant responded to the petition and requested that the probate court instead divide Alma's sub-trust into three equal shares for the named beneficiaries under the language of Section 2. At a hearing on September 14, 2021, the probate court concluded in part:

> Okay, I'm holding that because . . . the death of a beneficiary could only apply to Alma [Rocheleau] that the provisions of Article 7, Section 3 must apply. . . .
>
> Obviously there is a conflict. It's almost impossible to resolve, but I believe that a better practice is always to go when there is a conflict to the plain words of the document and the Rule of Construction here is that, I'm going to the last stated position of the Settl[o]r.

Consequently, the court entered an order "directing that the trust held for the benefit of Alma Rocheleau shall be distributed to her heirs at law . . . ." This appeal followed.

## II. STANDARD OF REVIEW AND INTERPRETIVE PRINCIPLES

We review "de novo the proper interpretation of a trust." *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013). We also review de novo the decision whether a trust is ambiguous. *In re Bem Estate*, 247 Mich App 427, 433; 637 NW2d 506 (2001). "De novo review means that we review the legal issue independently" and without deference to the trial court. *Wright v Genesee Co*, 504 Mich 410, 417; 934 NW2d 805 (2019). In addition:

---

[1] "If a governing instrument calls for property to be distributed 'per stirpes', the property is divided into as many equal shares as there are surviving children of the designated ancestor and deceased children who left surviving descendants." MCL 700.2718(2).

[2] Any forthcoming references to Sections 1, 2, and 3 refer only to those sections in Article Seven of the Trust.

This Court reviews the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. The probate court's decisions are generally reviewed for an abuse of discretion. An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes. An error of law necessarily constitutes an abuse of discretion. [*In re Huntington Estate*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354006); slip op at 4-5 (quotation marks and citations omitted).]

The purpose of interpreting a trust is "to ascertain and give effect to the intent of the settlor." *Stan Estate*, 301 Mich at 442. "Interpretation begins with an examination of the trust language, and if there is no ambiguity, the trust terms are interpreted according to the plain and ordinary meaning." *Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 496; 948 NW2d 452 (2019) (citations omitted). However, if "the trust's terms are ambiguous, a court must look outside the document to determine the settlor's intent, and it may consider the circumstances surrounding the creation of the trust and the general rules of construction." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 693; 880 NW2d 269 (2015).

## III. ANALYSIS

Appellant argues the probate court erred in determining Alma's trust share was to be distributed to appellees rather than to the three named charities in the Trust.[3]

This case involves a dispute over two conflicting trust provisions. On one hand, Article Seven, Section 2 states: "Upon the death of Alma O. Rocheleau, any part of the trust property still held in trust shall be distributed to the other beneficiaries named in Section 1 above as the Grantor has provided for them." The other beneficiaries named in Section 1 are the three charities. On the other hand, Article Seven, Section 3 states: "[T]he Trustee shall distribute the trust established for a deceased beneficiary to the then living descendants, per stirpes, of such deceased beneficiary."

Appellant argues that Article Seven, Section 2 is unambiguous because the Trust specifically provides that Alma's sub-trust will be distributed to the other named beneficiaries upon her death. But when considered alongside Article Seven, Section 3, an ambiguity arises. Section 2 provides that the proceeds of Alma's sub-trust pass to the charities, but Section 3—

---

[3] Appellees argue that appellant lacks standing to pursue this appeal because, as the trustee rather than a beneficiary, appellant is not an "interested person aggrieved" by the probate court's order under MCR 5.801. Not only did appellees fail to challenge appellant's standing in the probate court, but they affirmatively waived this argument by listing appellant in their petition for instruction on beneficiary status as an "interested person[] to this petition." See *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014). In any event, appellant has standing as trustee to appeal what she believes to be an erroneous interpretation of the Trust. See MCR 5.125(C)(33)(c) (listing the "current trustee" as an interested person in a proceeding affecting the trust other than proceedings covered by other subrules). See also *In re Perry Trust*, 299 Mich App 525, 529; 831 NW2d 251 (2013) (holding that trustee had standing to appeal because of the trustee's "duty to ensure that the Trust is properly administered according to its terms and for the benefit of all its beneficiaries").

which could only apply to Alma as the sole deceased beneficiary—designates her remaining trust property be distributed to her heirs. Therefore, the probate court did not err by concluding that the conflicting provisions created an ambiguity.

When a trust contains an ambiguity, a reviewing court "must look outside the document to determine the settlor's intent," and in doing so, "may consider the circumstances surrounding the creation of the trust." *Brown Trust*, 312 Mich App at 693. See also *Zurich Ins Co v CCR & Co (On Rehearing)*, 226 Mich App 599, 607; 576 NW2d 392 (1997) (providing that a reviewing court "must inquire" into the "circumstances or relations of the parties underlying the contract" if those circumstances or relations "resolve th[e] ambiguity" at issue). Because there was an ambiguity in the Trust that could not be resolved by looking within the four corners of the document, the probate court needed to consider the circumstances surrounding the creation of the trust.

In her response to appellees' petition for instruction on beneficiary status, appellant submitted an affidavit from Julius H. Giarmarco. Giarmarco was Rech's attorney, drafted Rech's estate plan, and met with Rech before the execution of the Trust. Giarmarco stated that Rech had "clear intentions as it related to the distribution of his estate." Specifically, Giarmarco averred that "Rech's intent was that any portion of Alma's trust that was not distributed to her outright during her life[] was to be redistributed to the . . . charities upon her death . . . ." In addition, Giarmarco stated: "[I]t was not Raymond Rech's intent that any portion of his trust be distributed to the descendants of Alma Rocheleau." Giarmarco averred that Article Seven, Section 3 was not included in the Trust "to refer to Alma Rocheleau's distributive share," but rather to "govern[] the administration of a trust for a deceased beneficiary if such trust is created by another section" of the Trust.

The probate court largely discounted consideration of the affidavit, an error that led to an erroneous interpretation of the Trust. The probate court first stated that the law disfavors extrinsic evidence. To the extent this is accurate, this principle does not apply when interpreting *ambiguous* provisions of a trust. See *Brown Trust*, 312 Mich App at 693. In such a case, extrinsic evidence is not disfavored, but can be integral to determining the settlor's intent. Later, the probate court stated that although the affidavit did "shed some light" on the issue, it did not matter what Giarmarco thought because Rech "is the person whose intent is really at issue here." We agree that Rech's intent is what matters. Yet there is no evidence that the contents of the affidavit reflect only Giarmarco's impression of Rech's intent. After all, Giarmarco met with Rech and worked with him to create his estate plan. In addition, Giarmarco's statements align with the plain text of Article Seven, Sections 1 and 2, which state that Alma's share was to be distributed to the three charities on her death. And since these Trust provisions conflicted with Article Seven, Section 3, the affidavit from Giarmarco provided some of the best—if not only—available evidence of what Rech actually intended for the distribution of Alma's trust property upon her death. Therefore, the trial court erroneously discounted the relevance of the affidavit in determining the proper interpretation of the Trust.

Further, in concluding that Alma's trust proceeds should pass to appellees, the probate court looked to rules of construction. See *Brown Trust*, 312 Mich App at 693. The probate court relied on a rule from *Foster v Stevens*, 146 Mich 131, 139; 109 NW 265 (1906), which states: "It is a well-established rule of construction that, if two clauses in a will are absolutely irreconcilable,

-4-

the last prevails, as being the latest expression of the testator's wishes."[4]  Because Article Seven, Section 3 came after Article Seven, Sections 1 and 2 in the Trust, the probate court determined that Rech's "last stated position" should control.

Appellants make two arguments that the probate court erred in its application of the rules of construction.  First, appellants contend that the "last statement" rule from *Foster* did not apply here.  Appellants point to *Foster*'s discussion of a "superior rule":

> [W]here one estate is given in one part of an instrument in clear and decisive terms, such estate cannot be taken away or cut down by raising a doubt upon the extent or meaning or application of a subsequent clause, nor by inference therefrom, *nor by any subsequent words that are not as clear and decisive as the words of the clause giving that estate*.  [*Foster*, 146 Mich at 140 (emphasis added).]

Thus, subsequent language should not override earlier clear language where the later language is not "clear, decisive, and unequivocal."  *Id*.  The *Foster* Court did not apply this "superior rule" because it found the later language of the will at issue to be "clear, decisive, and unequivocal."  *Id*.  Here, on the other hand, the language of Article Seven, Section 3—the later provision—is not "clear, decisive, and unequivocal," particularly as compared to the earlier, more specific provisions on the distribution of Alma's trust proceeds.  Accordingly, the probate court erred when it relied on the rule of construction from *Foster* to conclude that Section 3 controlled and that Alma's subtrust proceeds should pass to her grandchildren.

Second, appellants argue that the probate court should have employed the rule that specific provisions control over general provisions related to the same subject matter.  Since Article Seven, Section 2 specifically applies to Alma's sub-trust, while Article Seven, Section 3, speaks in general terms about any deceased beneficiary, appellants contend that Section 2 should control.  We decline to apply this rule here because our review of caselaw has found the rule only applied to cases involving contracts or statutes, not wills or trusts.  See, e.g., *TOMRA of North America, Inc, v Dep't of Treasury*, 505 Mich 333, 350; 952 NW2d 384 (2020) (quotation marks and citations omitted) ("[W]here a statute contains a general provision and a specific provision, the specific provision controls."); *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 263; 911 NW2d 241, 252 (2017) ("[W]here a contract contains specific and general terms, the specific terms normally control over the general terms.").  In any event, this canon of construction is unnecessary to our disposition of the case.

Ultimately, we must read the Trust as a whole, "harmonizing its terms with the intent expressed" by the settlor.  *Brown Trust*, 312 Mich App at 694.  Here, the probate court's interpretation of the Trust fails to harmonize the instrument with the evidence presented of Rech's intent.  The affidavit from Rech's attorney provided the only evidence reconciling the ambiguity in the Trust and explaining Rech's intent, and the probate court did not suggest any basis for doubting the credibility of the affidavit's assertions.  Nor did any rule of construction mandate the

---

[4] "The rules of construction applicable to wills also apply to the interpretation of trust documents."  *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005).

probate court's result.  Therefore, interpreting the Trust to require distribution of Alma's sub-trust to the three charities is the appropriate way to resolve the ambiguity.

Accordingly, we reverse and remand for an order distributing the proceeds of Alma's sub-trust to the other named beneficiaries.  We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett