*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THOMAS J. AND CAROL A. WILLIAMS
TRUST.

BRENDA L. GRISMER, Co-Trustee,

      Appellee,

v

TIMOTHY J. HANSEN, Co-Trustee,

      Appellant.

UNPUBLISHED
February 22, 2024

No.   365747
Kent Probate Court
LC No.   23-212829-TV

Before:  HOOD, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Timothy J. Hansen, co-trustee of the Thomas J. and Carol A. Williams Trust (hereinafter: "Williams Trust" or "the trust"), appeals by right the probate court's findings following a petition for instructions filed by co-trustee Brenda L. Grismer. We affirm.

## I. BACKGROUND

This case involves a dispute within a blended family. The trust subject to this dispute was established by Thomas and Carol Williams, a now-deceased married couple (hereinafter referred to as Tom and Carol). Tom had two children from a prior marriage: Brenda Grismer and Pamela Mundstock (hereinafter referred to as Brenda and Pam). Carol also had two children from a prior marriage: Timothy Hansen and Lisa Bowen (hereinafter referred to as Tim and Lisa).

Tom and Carol established the trust in 2009, and shortly thereafter they transferred title to their residence and their condominium in Ludington to the trust. Article VII of the trust provided that after the death of the first grantor, the children of the deceased grantor would each receive $150,000. These distributions would first be paid out of the deceased grantor's retirement account, and to the extent the account could not satisfy these distributions, the difference would be made up from the trust's general funds. After Carol died in 2010, Tom, Brenda, and Pam disclaimed

-1-

their interests in Carol's retirement account so that Lisa and Tim could each receive $110,000. Once the retirement account was distributed, the trust no longer had any liquid assets; to ensure Tim and Lisa each received the whole $150,000, Tom loaned $80,000 to the Williams Trust. This distribution gave rise to one of this case's disputes.

Tom established the Thomas J. Williams Protection Trust in 2014, then he remarried in 2017. From February to October 2017, Tom made a series of significant transactions that impacted the Williams Trust. In February 2017, Tom purchased a new condominium, and he financed that purchase by taking out a $374,300 mortgage. The following July, Tom sold his residence and deposited the $639,775.49 proceeds from the sale in a bank account opened for the Williams Trust. Tom then withdrew $373,249.90 from the trust's account and used it to pay off the mortgage for his new condominium; this transaction is the subject of this case's other dispute. Tom also sold the Ludington condominium and deposited the proceeds into the account for the Williams Trust.

Tom was certified as incapacitated in February 2021, and Tim and Brenda then began serving as co-trustees of the Williams Trust. Tom died in December 2021, and Tim and Brenda disagreed regarding the trust's final distributions. First, Tim contended that Tom violated the trust by withdrawing funds to pay off the mortgage for his new condominium. Second, Tim contended that the money distributed from Carol's retirement account should not be credited to him and Lisa when calculating shares for the final distribution. Brenda filed a petition for instructions, and the court disagreed with Tim on both fronts.

This appeal followed.

## II. STANDARDS OF REVIEW AND GOVERNING LAW

"The standard of review on appeal in cases where a probate court sits without a jury is whether the court's findings are clearly erroneous." *In re Estate of Bennett*, 255 Mich App 545, 549; 662 NW2d 772 (2003). A clear error occurs "when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*. This Court reviews "de novo a probate court's construction and interpretation of the language used in a will or a trust." *In re Stillwell Trust*, 299 Mich App 289, 294; 829 NW2d 353 (2012).

"In resolving a dispute concerning the meaning of a trust, a court's sole objective is to ascertain and give effect to the intent of the settlor." *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008). "This intent is gauged from the trust document itself, unless there is ambiguity. If ambiguity exists, the court must look outside the document in order to carry out the settlor's intent, and may consider the circumstances surrounding the creation of the document and the general rules of construction." *Id*. (citation omitted). The interpretation of trust documents is governed by the same rules applicable to the interpretation of wills. *In re Estate of Reisman*, 266 Mich App 522, 527; 702 NW2d 658 (2005). A will or trust should be construed "in its entirety, gathering its intent as expressed within the four corners of the instrument, not by emphasizing the wording of any isolated paragraph." *Hudson v Lindsay*, 383 Mich 126, 130; 174 NW2d 822 (1970) (quotation marks and citation omitted). This Court "may not construe a clear and unambiguous will in such a way as to rewrite it, and, where possible, each word should be given meaning." *Reisman*, 266 Mich App at 527 (quotation marks and citations omitted).

## III. TOM'S WITHDRAWALS

Tim argues that Tom violated the terms of the trust by withdrawing funds to pay off the mortgage on his new condominium. We disagree.

Resolution of this appeal requires this Court to harmonize three seemingly-contradictory provisions of the Williams Trust. First, Article II provides that the trust would become irrevocable if either Tom or Carol died. Article III, however, provides that if one grantor dies, the other may "act alone in exercising all rights given to Grantors under this Trust . . . ." Then, Article VI.A provides that the grantors, while both are living, have the right "to remove property from the Trust Property, to make gifts, and to deal with the Trust Property without accounting to" anybody else. Article VI.A also instructed the trustee to "pay to, or for the benefit of, Grantors" as much trust property as is requested. Tim argues that the trial court's interpretation nullifies Article II, but Tim's argument would nullify Article III. Tim essentially argues that Tom lost all rights to the trust property when Carol died.

These three provisions can be reconciled. Article II can reasonably be read as a restriction placed on the rights conferred upon the surviving grantor by Article III. In other words, the surviving grantor was permitted to exercise all rights given to the grantors to the extent that the exercise of these rights did not revoke the trust. This interpretation is bolstered by the fact that Article VI.A empowers the surviving grantor "to remove property" and instructs the trustee to "pay to" the grantor as much as requested, but it does not specifically provide that a grantor may remove all of the property. When read together, these provisions enabled Tom to continue his use and ownership of the property in the same manner as he used and owned the property prior to Carol's death but disabled him from revoking the trust or disinheriting Carol's children.

Moreover, Tim's interpretation would frustrate the trust's purpose. When read as a whole, the purpose of the trust is easily ascertainable. The trust provided an avenue through which Tom and Carol could enjoy their property during life and smoothly pass the property to their children upon death. The trust was revocable during life so that the parties could be free to mutually change their minds about the disposition of their property, but it became irrevocable upon the death of one grantor to protect the deceased grantor's children from being posthumously disinherited. The purpose of Article III was to ensure that the surviving grantor, while not free to disinherit the children of the deceased grantor, was free to continue enjoying the property during life any way this grantor saw fit. The trial court's interpretation of the trust was consistent with the grantors' intent. In contrast, Tom would not have been permitted to dispose of the property in a bad -faith manner aimed at disinheriting Carol's children.

Tim cites *Foster v Stevens*, 146 Mich 131, 140; 109 NW 265 (1906), for the proposition that "[w]hen reconciling two contradictory provisions, the subsequent provision should not override earlier clear language where the subsequent provision is not 'clear, decisive, and unequivocal.' " However, when viewed as a whole, this case does not support Tim's position. In *Foster*, the Supreme Court also said, "It is a well-established rule of construction that, if two clauses in a will are absolutely irreconcilable, the last prevails, as being the latest expression of the testator's wishes." *Id*. at 139. However, for the last to prevail, the language must be "clear, decisive, and unequivocal, and [be] the last words of the testator upon the subject." *Id*. at 140. Tim seems to argue that the trial court's decision was erroneous because Article III.A did not

clearly, decisively, and unequivocally repudiate Article II. However, this is not a case in which the provisions "are absolutely irreconcilable" because, for the reasons discussed above, they can be harmonized. *Id*.

## IV. DISTRIBUTION FROM RETIREMENT ACCOUNT

Tim argues that the trial court erred by including the distributions from Carol's retirement account when calculating the beneficiaries' final shares. We disagree.

The trust provided that when the first grantor died, the children of the deceased grantor would each receive a $150,000 distribution. These distributions would be funded first by the deceased grantor's retirement plan then, to the extent the distribution is not fully satisfied by the retirement plan, by the trust's general funds. When Carol died, Tom, Brenda, and Pam each disclaimed their interests in her retirement account so that all of the money could go to Tim and Lisa, but this was only sufficient for them each to receive $110,000. According to the terms of the trust, the remaining distribution would be satisfied from the trust's remaining assets; however, the trust's only remaining assets were real property, and the trust had no liquid assets. To rectify this, Tom borrowed $80,000 against his 401K account in order to pay Tim and Lisa the remaining $40,000 each that was owed pursuant to the terms of the trust.

The parties' second dispute revolves around how this prior distribution affects the final distribution that is due now that Tom has died. Article IX provides that the remaining assets shall be divided equally among Brenda, Pam, Tim, and Lisa. However, for the purposes of calculating these shares, "any distributions made pursuant to Article VII of this Trust shall be added to the Trust Property and the combined amount shall be divided into equal shares with the amount distributed pursuant to Article VII of this Trust being charged against that Beneficiary's share." Brenda argues, and the trial court agreed, that the entirety of the $300,000 distributed upon Carol's death should be included in the calculation of the trust's property and that the $150,000 given to Tim and Lisa should be charged against their respective shares. Tim argues that only the $80,000 Tom needed to contribute in order to fully satisfy the distributions should be added to the trust's property with only the $40,000 received by Tim and Lisa from this source being charged against their respective shares. Brenda's interpretation is consistent with the plain language of the trust and with the trust's purpose.

Article VII requires distributions of $150,000 and then delineates the proper order for the sources of these distributions. The first sentence of Article VII says, "Upon the death of the first Grantor to die, Trustee shall ensure that the sum of One Hundred Fifty Thousand Dollars ($150,000) is distributed to each of the deceased Grantor's surviving children." From this sentence, it is clear and unambiguous that the "distribution" is the $150,000 to be received by Tim and Lisa. The second sentence says, "Grantors intend to *satisfy this distribution* by naming their respective Children as beneficiaries of their qualified retirement plans." (Emphasis added.) This reinforces that the distribution is the $150,000, the retirement plan is the primary source of the distribution, and the trust's remaining assets are the secondary source of the distribution. Article IX is clear that it refers to *any* distribution made pursuant to Article XII, and Article VII is clear that the distribution being made is the entire $150,000 regardless of its source. The strained reading of this unambiguous section for which Tim advocates would amount to rewriting the trust, which this Court cannot do. See *Reisman*, 266 Mich App at 527.

-4-

Moreover, the interpretation advanced by Brenda and adopted by the trial court is consistent with the trust's purpose. When these provisions are viewed within the greater context of the trust, it is clear that it was intentionally structured in such a way that (1) all four children would share equally in the couple's assets and (2) all four children would promptly receive at least some of their inheritance immediately after the death of their parent rather than making half of the children wait for their stepparent to die as well. Brenda's interpretation is consistent with this intent whereas Tim's interpretation would result in a windfall for the two children whose parent died first.

Affirmed. Brenda, being the prevailing party, may tax costs. See MCR 7.219.

/s/ Noah P. Hood
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado