*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PHILPOT ESTATE.

STEVEN LULL, Co-Personal Representative of the
ESTATE OF WILLIAM G. PHILPOT,

        Appellant,

v

JENNIFER CLARK, Co-Personal Representative of
the ESTATE OF WILLIAM G. PHILPOT,

        Appellee.

UNPUBLISHED
October 11, 2024
3:15 PM

No. 365107
Iosco Probate Court
LC No. 21-004330-DE

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Appellant, Steven Lull, appeals by right the probate court's order requiring the estate of William G. Philpot to sell real property and give to the decedent's three children, or their descendants, a total of $200,000 from the sale proceeds in accordance with the decedent's will. Finding no error, we affirm.

## I. BACKGROUND

The decedent, William G. Philpot (William), died on March 28, 2007. At that time, he was married to Michaelene Philpot (Michaelene). He had three children from a prior marriage, appellee Jennifer Clark, Donald Philpot, and Robert Philpot. A few months before William's death, he conveyed parcels of real property that he owned to himself and Michaelene as tenants by the entireties. Michaelene executed an agreement in consideration of the conveyances stating that she agreed to pay Clark, Donald, and Robert equal amounts totaling $200,000 within three years after William's death. Five days after Michaelene executed the agreement, William executed his will. In his will, William devised all of his real property to Michaelene, including his property located at 1033 Lake Street, Tawas City, Michigan, where he and Michaelene resided. The will stated that

-1-

"most, if not all, of that real estate is held as tenants by the entireties" with Michaelene. The will further stated:

> The nature of this ownership is to facilitate the liquidation of my estate upon my demise with the explicit agreement and understanding on the part of my wife, Michaelene, that she shall distribute the sum of Two Hundred Thousand ($200,000.00) dollars of the value of said real property to my three children, equally, within three years of the date of my demise.

It is undisputed that the Lake Street property remained titled in William's name only.

After William's death, Michaelene continued to reside at the Lake Street property for several years, and Lull, her son, eventually moved in with her when she was in ill health. Michaelene died on August 5, 2020. Lull was appointed personal representative of her estate. He filed a petition to open William's estate so that the Lake Street property could be transferred from William's estate to Michaelene's estate. Clark opposed the transfer on the basis that Michaelene failed to pay her, Donald, and Robert equal sums totaling $200,000 as stated in William's will. The probate court appointed Lull and Clark co-personal representatives of William's estate. It is undisputed that Michaelene paid Clark, Donald, and Robert each $10,000, but failed to pay the remainder of the $200,000.

Following a bench trial, the probate court ordered that the Lake Street property be listed for sale and that $170,000 of the sale proceeds be paid to Robert's descendants,[1] Clark, and Donald. This appeal followed.

## II. STANDARDS OF REVIEW

We review for clear error the probate court's factual findings following a bench trial and review de novo its conclusions of law. *In re Estate of Eggleston*, 266 Mich App 105, 112; 698 NW2d 892 (2005). Factual findings are clearly erroneous when we are left with a definite and firm conviction that an error has occurred. *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). We review de novo as a question of law the probate court's interpretation of a will. *In re Estate of Raymond*, 276 Mich App 22, 27; 739 NW2d 889 (2007). We also review de novo as a question of law whether the statute of limitations bars a claim. *Scherer v Hellstrom*, 270 Mich App 458, 461; 716 NW2d 307 (2006). Finally, we review de novo a trial court's decision regarding application of the equitable doctrine of laches, but review for clear error the court's findings of fact supporting the decision. *Shelby Twp v Papesh*, 267 Mich App 92, 108; 704 NW2d 92 (2005).

---

[1] Robert died at some point after William's death.

## III. ANALYSIS

### A. WILL DISTRIBUTION

The probate court's role when interpreting a will is to determine and give effect to the testator's intent. *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013). Absent a patent or latent ambiguity, the testator's intent is determined on the basis of the will's plain language. *In re Estate of Reisman*, 266 Mich App 522, 527; 702 NW2d 658 (2005). A court may not interpret a clear and unambiguous will in such a manner as to rewrite it. *Id.*

Lull argues that the probate court erred by ordering the sale of the Lake Street property despite the language of the will directing that all of William's properties, including the Lake Street property, be given to Michaelene. He further contends that the will neither conditioned the bequest of the Lake Street property on Michaelene's fulfillment of her agreement to pay William's children $200,000 nor required liquidation of the property to enable her to do so. Lull's arguments are unavailing. Although the will directed that the Lake Street property, in addition to others, be given to Michaelene, as the probate court explained, the Lake Street property had to be liquidated in order to carry out William's intent that his children be given $200,000. The probate court determined that "there was a promise to pay" that was protected by "the fact that the most valuable property was titled in [William's] name alone." The probate court thus concluded that William had made it clear that his children would be compensated out of his estate and that the probate of the Lake Street property was inevitable if Michaelene failed to pay the $200,000. Therefore, the probate court properly gave effect to William's intent by ordering the liquidation of the Lake Street property so that Clark, Donald, and Robert's descendants could be paid in accordance with William's intent as plainly expressed in his will.

### B. STATUTE OF LIMITATIONS

Lull next argues that the probate court erroneously declined to apply the statute of limitations to bar Clark's claim, which he asserts constituted an untimely breach-of-contract claim. We disagree.

The statutory limitations period applicable to a breach-of-contract action is six years. MCL 600.5807(9); see also *Peabody v DiMeglio*, 306 Mich App 397, 404; 856 NW2d 245 (2014). Lull contends that the probate court erroneously enforced Michaelene's agreement with William 14 years after William's death and 11 years after the alleged breach of the agreement. Lull's argument is misplaced. The probate court did not enforce the agreement between William and Michaelene. Rather, the court interpreted William's will and decided the parties' arguments accordingly. In any event, as the probate court recognized, the agreement between William and Michaelene pertained only to the properties that they held as tenants by the entireties and did not pertain to the Lake Street property at issue.

### C. LACHES

Lull next contends that the probate court erred by rejecting his argument that the doctrine of laches barred Clark's claim. We disagree.

The doctrine of laches is an equitable doctrine used to remedy the inconvenience resulting from a party's delay in asserting a legal right. *Knight v Northpointe Bank*, 300 Mich App 109, 115; 832 NW2d 439 (2013). Application of the doctrine "is not triggered by the passage of time alone." *Id*. at 114. Rather, application of the doctrine "requires the passage of time combined with a change in condition that would make it inequitable to enforce the claim . . . ." *Twp of Yankee Springs v Fox*, 264 Mich App 604, 612; 692 NW2d 728 (2004). Thus, "[l]aches does not apply unless the delay of one party has resulted in prejudice to the other party." *Id.*

Lull has failed to establish that any delay on behalf of William's children prejudiced Michaelene or himself. Lull asserts that Michaelene was prejudiced by the delay because she paid the taxes and made repairs and improvements to the property over time, and she would not have had to do so if she had been required to sell the property and pay William's children at an earlier date. As the probate court recognized, however, if William's children waited too long to settle William's estate, the same can be said of Michaelene. Lull's argument that Michaelene would not have had to pay the taxes and repair the property appears to fault William's children for her own failure to pay them within three years after William's death as stated in the will.

The same reasoning applies to Lull's other arguments. He contends that the value of the Lake Street property has decreased over the years and that the property was damaged by a fire in 2015. If Michaelene had sold the property and paid William's children within three years after William's death, however, the property would have seemingly sold for a higher price and would not have been partially destroyed by fire in 2015. Lull also asserts that if William's children had asserted their rights sooner, Michaelene herself would have been able to testify regarding the amounts that she had paid them of the $200,000 and he would not have had the difficulty of attempting to determine the amounts that had been paid. If William's children had asserted their rights sooner, however, the property would have been sold and neither Michaelene nor Lull would have been able to reside on the property rent-free for the length of time that they did so.

Lull also argues that if William's children had pursued the $200,000 sooner, Michaelene could have elected against the will and taken her statutory spousal share of William's property under MCL 700.2202(2).[2] Lull calculates that Michaelene could then have received $50,000 plus one-fourth of the remainder of William's estate. Michaelene had the opportunity to elect against the will, however, and failed to do so.

---

[2] MCL 700.2202(2) provides, in relevant part, as follows:

> The surviving spouse of a decedent who was domiciled in this state and who dies testate may file with the court an election in writing that the spouse elects 1 of the following:
>
> (a) That the spouse will abide by the terms of the will.
>
> (b) That the spouse will take ½ of the sum or share that would have passed to the spouse had the testator died intestate, reduced by ½ of the value of all property derived by the spouse from the decedent by any means other than testate or intestate succession upon the decedent's death.

-4-

## D. CREDITS

Finally, Lull argues that the probate court erred by failing to credit payments that Michaelene had made to William's children against the amount owed. Lull testified that Michaelene informed him "lots of times" that she paid William's children more than $200,000 through cash, property, and financial assistance. The probate court credited against the amount owed only the three $10,000 checks that Michaelene paid to William's children in January 2008. Because Lull fails to provide any legal analysis in support of his argument that the probate court erred by failing to credit other amounts against the amount owed, he has abandoned his argument. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitchell v Mitchell*, 296 Mich App 513, 524; 823 NW2d 153 (2012) (quotation marks and citation omitted).

Affirmed.


/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani