*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF GLADYS SCHUHMACHER.

DAVID SCHUHMACHER, YVONNE RANDALL
AND GARY SCHUHMACHER,

UNPUBLISHED
October 13, 2022

Appellees,

v

No. 357958
Roscommon Probate Court
LC No. 13-054465-DE

COLLEEN WILLIAMS,

Appellant.

Before: MARKEY, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Appellant Colleen Williams (Colleen), appeals by right the June 1, 2021 order of the probate court that, in part, granted the motion of appellee David Schuhmacher (David), personal representative for the estate of his mother, Gladys Schuhmacher (Gladys), to approve the sale of Gladys's home in Houghton Lake Heights (the Houghton Lake Heights property).[1] The probate court had previously approved the sale of estate property in West Branch (the West Branch property) to Walter Schuhmacher (Walter). Gladys's other surviving offspring include intervening

---

[1] Judge Douglas C. Dosson presided over this case in the probate court from March 26, 2013 until his apparent retirement in 2015. Judge Eugene R. Turkelson presided at an August 24, 2015 motion hearing regarding the sale of certain property located in West Branch. Judge Nancy A. Kida presided at the continuation of that hearing on November 23, 2015 and at a February 8, 2016, motion hearing regarding the requested removal of the personal representative. Judge Mark D. Jernigan presided over the remainder of the case, including hearings regarding the sale of the Houghton Lake Heights property.

appellees Yvonne Randell (Yvonne) and Gary Schuhmacher (Gary).[2]  We conclude that the probate court erred by ordering the estate to pay Walter $10,000 for maintaining the Houghton Lake Heights property, because it was contrary to an earlier agreement, and that the probate court further erred by not accounting for the distribution of proceeds from oil leases that were listed as estate property.  On remand, the probate court should hold a hearing to determine these matters, as well as the status of the distribution of the proceeds from the sale of the Houghton Lake Heights property.  We otherwise affirm the probate court's rulings, and therefore affirm in part, vacate in part, and remand for further proceedings.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Gladys died on May 6, 2010 and was survived by five children, in order of age (oldest to youngest): David, Gary, Yvonne, Colleen, and Walter.  In 2013, Yvonne was appointed personal representative of the Gladys's estate after requesting appointment and alleging that Gladys had died intestate.  Walter and Colleen moved the probate court to remove Yvonne as personal representative, alleging that Gladys had left a will that nominated David as her personal representative.  After a hearing, the probate court granted the motion, appointed David as personal representative, froze the assets of the estate, and ordered David to provide an inventory of the estate.

Gladys's will named David as the estate's personal representative and directed that her property be distributed to her children, except that Colleen was "not to share in any of the personal possessions of the testator, as she has already been given everything that she wanted."  An inventory of the estate listed the Houghton Lake Heights property valued at $40,000, the West Branch property with an unknown value, an oil lease worth $7,150, a $293 bank account, a $1,000 vehicle, and $3,582 in personal property (total estate value of $52.053).

Yvonne and Gary moved for a distribution of Gladys's property and sought to have Colleen return personal property of Gladys that she had taken, because the will excluded her from receiving personal property.  David responded by providing a codicil to Gladys's will that included Colleen in the distribution of property.  The codicil listed all five surviving children as recipients of Gladys's property, and also referenced "any money regarding the lease (rent) agreement" in relation to the West Branch property.

Yvonne and Gary objected to the admission of the codicil, asserting that Yvonne had hired a handwriting expert who had determined that the codicil was forged.  They also objected that the amended inventory did not include personal property from the West Branch property or many other items in Colleen's possession, including antiques and silver.  Walter and Colleen also objected to the inventory of the estate's assets, arguing that that the valuation of the Houghton Lake property was below market value.

---

[2] This Court granted Yvonne and Gary's motion to intervene in this appeal.  *In re Estate of Schuhmacher*, unpublished order of the Court of Appeals, entered October 25, 2021 (Docket No. 357958).

In 2015, the probate court held an evidentiary hearing regarding these contested issues, and found that Gladys had sold the West Branch property to Walter under a land contract. The probate court found that Walter had agreed to buy the West Branch property for $80,000, with a $5,000 down payment and $500 monthly payments at 11% yearly interest, but noted that the payment amount specified in the contract was insufficient to cover the interest as it accrued, much less reduce the principal obligation. The probate court concluded that Walter owed an outstanding amount on the land contract. The probate court determined that the fair market value of the West Branch property was $83,100, minus the $26,000 remaining on Gladys's mortgage for the property, and that the estate and Walter remained subject to the land contract on which Walter owed $103,386. The probate court held that the contested issues regarding personal property on the amended inventory that were discussed in evidentiary hearings had been resolved, either by stipulation or involuntary dismissal, and that the objection to the codicil had been withdrawn.

In 2015, Yvonne and Gary again moved to remove David as personal representative of the estate, asserting, among other things, that David had delayed opening the estate or reading the will to the heirs, that he had "endorsed" Walter's and Colleen's alleged misleading of the probate court with misrepresentations and fraudulent documents, that David was depositing the oil lease payments into his personal account, and that David and Colleen had assaulted Yvonne. Also in 2015, David moved the probate court to approve the sale of the West Branch property to Walter, with Walter assuming the mortgage payments while waiving all future claims to estate assets. Yvonne and Gary objected. The probate court granted David's motion.

At the 2016 hearing on the motion to remove David as personal representative, Gary testified that Gladys's intent had been to divide her property in five equal parts, and that David had not acted in accordance with those directions. Gary claimed that David had failed to deposit into the estate's account a $7,000 payment (related to the lease of oil rights), causing the funds to be returned to the oil company, and had not been forthcoming with the heirs in providing information about the estate. David testified that he was unable to deposit the oil lease check because it was written in December 2021, 18 months before he was appointed as personal representative. Gary also alleged that David had titled a vehicle belonging to the estate in his own name, and that Gladys had owned several other vehicles that were not accounted for, such as boats, a jeep, pickup trucks, and a dump truck. David responded that the inventory, which had been approved, listed all known vehicles owned by the estate. Gary also argued that the sale of the West Branch property to Walter was inequitable, and that the land contract had been improperly altered, but the probate court held that the time for objecting to the sale had passed. The probate court denied the motion to remove David as personal representative.

In April 2021, David moved the probate court to release the lis pendens (notice of pending legal action, see MCL 600.2701) on the Houghton Lake Heights property that Yvonne had recorded in 2018, and approve the sale of the property to an unrelated party. In May 2021, Walter moved the probate court to enforce its order for David to sell him the West Branch property, and also requested reimbursement of expenditures he had incurred to maintain and improve the property.

At a motion hearing before Judge Jernigan, Walter's attorney asked the probate court to order David to execute a deed conveying the West Branch property to Walter as previously ordered by Judge Nancy A. Kita. David's attorney responded that he was unaware that the deed had not

been executed, and promised to transfer the deed to Walter as soon as possible. Yvonne requested an adjournment so that she, Gary, and Colleen could seek legal counsel, explaining that they did not agree with the sale in light of the appraised value and a question regarding the validity of the contract. The probate court ordered that David deed the property to Walter within 30 days. The probate court then adjourned the hearing for two weeks to allow Yvonne and Colleen time to prepare their objections to the sale.

At the continuation of the motion hearing, the attorneys for Walter and David stated that there was agreement to reimburse Walter $10,000 for repairs, utilities, and maintenance that he had personally expended on the Houghton Lake Heights property. They also informed the probate court that the deed to the West Branch property had been given to Walter, but had not yet been recorded. The probate court determined that there was a fair market value, arm's-length offer for the Houghton Lake Heights property and, with no other concrete offers in view, ordered the sale of that property. The probate court issued an order on June 1, 2021 that the Houghton Lake Heights property could be sold and the lis pendens discharged. The probate court further granted $10,000 of the proceeds of that sale to Walter in satisfaction of all present and future claims against the estate, and ordered the balance of the proceeds from the sale to be equally divided among Yvonne, Colleen, Gary, and David. The probate court subsequently denied Colleen, Gary, and Yvonne's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

"[A]ppeals from a probate court decision are on the record, not de novo." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008). This Court reviews the probate court's factual findings for clear error, and its dispositional rulings for an abuse of discretion. *Id*. This includes the probate court's decision whether to remove a personal representative. *In re Duane v Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007). A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). A finding of fact is clearly erroneous where it leaves this Court with the definite and firm conviction that a mistake has been made. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008). We review de novo allegations of judicial misconduct. See *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015).

## III. SALE OF THE WEST BRANCH PROPERTY

Colleen argues that the probate court erred by approving the sale of the West Branch property to Walter. We disagree.

The primary functions of the probate court concerning wills is to determine the testator's intent, and to effectuate that intent. *In re Stan Estate*, 301 Mich App 435, 442; 839 NW2d 498 (2013). When there is no patent or latent ambiguity in the language of a will, the plain meaning of the terms express the testator's intent. *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005). "A court may not construe a clear and unambiguous will in such a way as to rewrite it." *Id*. (quotation marks, citation, and alteration omitted).

In this case, Article II of Gladys Schuhmacher's will provided as follows: "I devise all the rest, residue and remainder of my property, . . . all property over which I may have the power to appoint or dispose of by my Last Will and Testament to my beloved children." Article III nominated David as the estate's personal representative, and empowered the representative to "contract for the sale of or otherwise treat with all property as in his judgment shall be for the best interest of my estate, without the necessity of procuring any license or order from the court having jurisdiction of the administration of my estate." Therefore, in general, the intent expressed by Gladys's will was for David to distribute her estate to himself and his siblings.

The inventory of the estate listed the West Branch property as having an unknown value, because Walter had been living there under a land contract between Gladys and Walter. At the 2014 hearing regarding the land contract value, David and Walter argued that the value of the land contract to the estate was zero because of the payments that had been made. The other heirs argued that the value of the contract was unknown because Walter's payments on it were not recorded, and that the payments required by the contract would not even have covered the interest on Gladys's mortgage for that property.

Walter's documentation of his payments to Gladys were admitted into evidence, as was a statement by Glady from a previous deposition that she had sold the West Branch property to Walter under a land contract on February 12, 1993, which was never recorded, when Walter's parents still lived there. Walter testified that he moved onto the property in 1998, and had paid for the attendant utilities, taxes, and $62,400 in improvements. Walter testified that the terms of the land contract included $80,000 total for the property, a down payment of $5,000, monthly payments of $500, and 11% yearly interest, and that he typically paid $500 in cash each month. He added that he had made some lump-sum payments larger than $500, and, although he recorded some of them, he had relied on Gladys to keep track. He admitted that he had been incarcerated for a two-year period covering 1995 to 1997 and he did not make payments during that time, and stated that his parents lived at the property until 1998.

Walter further testified that, in 2001 or 2002, he paid Gladys's credit card bills, in addition to periodic $500 payments on the land contract. Walter testified that he had paid $77,652 in Gladys's credit card bills, and stated that Gladys had said that those payments would be credited as land contract payments. He further stated that from 2010 to 2013 he had paid $16,409 toward Gladys's living expenses. Walter opined that he had thus paid the land contract in full, and that the value of the property was currently $60,000 to $65,000. Walter testified that Gladys had had a mortgage on the West Branch property, on which he had been making the payments for five years, and that the remaining balance was $29,000. According to Walter, Gladys told him in September 2009 that she wanted to convey the property to him when she felt better.

The probate court concluded that a land contract for the sale of the West Branch property existed, but that any value left on the contract was an estate asset because a deed was never conveyed to Walter. The probate court invited interested parties to submit arguments on the value of the land contract. Walter submitted an accounting of payments and cancelled checks purporting to demonstrate that he had paid off the land contract, while Colleen, Gary, and Yvonne submitted a document which contained calculations that resulted in Walter owing $125,000 on the land contract.

The probate court issued an order reflecting its findings that Gladys had sold the home in West Branch to Walter under a land contract, that Walter agreed to buy the home for $80,000, with a $5,000 down payment and $500 monthly payments and 11% yearly interest, but that the interest alone would have been $200 more a month than the payments required under the contract. The probate court calculated, on the basis of Walter's testimony, that Walter owed an outstanding amount on the land contract. The probate court noted that the interested parties had valued the land contract differently, but that Walter could be credited for contributions he had made to the estate, and encouraged the parties to come to an agreement to convey the property to Walter, subject to the mortgage, in accordance with Gladys's wishes.

David subsequently moved the probate court to approve the sale of the West Branch property to Walter. At the hearing on the motion, the estate's attorney informed the probate court that there had been difficulty valuing the land contract because of the interest provision, Walter's various contributions to estate expenses, and the methods of payment, and asked that the valuation of the West Branch property to be entrusted to David as the personal representative. David asked the probate court to approve the sale of the West Branch property to Walter in consideration of his assumption of the mortgage, the one-fifth interest in the property already granted to Walter by the will, his waiver of his interest in the Houghton Lake Heights property, and $77,000 in documented payments for Gladys's expenses. Gary and Colleen objected on the grounds that they did not trust Walter's documentation or accounting.

The probate court approved the sale of the West Branch property to Walter, and listed the consideration paid to the estate as "assumption of the mortgage debt by the purchaser," "waiver of all present and future claims for additional estate property distribution by the purchaser," and "waiver and release of all present and future claims against the estate for payments, services or other actions by the purchaser." The probate court added that the consideration that Walter returned to the estate was adequate "such that acceptance of the same falls within the legal discretion of the personal representative." Colleen argues that the probate court erred by ordering the sale for multiple reasons, which we will discuss in turn.

A. FALSE REPRESENTATION

Colleen argues that the December 7, 2015 order approving the sale of the West Branch property to Walter was based on an inaccurate representation by Walter's attorney to the probate court during the 2015 hearing on the objections to the proposed order approving the sale. We disagree. At that hearing, Walter's attorney stated that, "[b]asically, it says all issues are resolved. He resolved all issues," when discussing the probate court's previous opinion regarding the value of the land contract. This Court's review of the transcript reveals that Walter's attorney made that statement after Colleen expressed skepticism about Walter's accounting of expenses for the estate that Walter claimed, and the probate court responded that that issue could not be developed and resolved within the scope of the present hearing. Walter's attorney remarked that "all of those issues have already been adjudicated, so there's nothing to catch up to speed with," and referred the probate court to the March 3, 2015 opinion on the value of the land contract. Walter's attorney elaborated, stating that "Judge Dosson has already adjudicated the issues that they're raising. A land contract is valid. He acknowledged my client made payments towards the land contract he acknowledged my client made payments that he wasn't going to apply to the land contract payments, but certainly my client could file a claim against the estate."

-6-

We discern no material misrepresentation in these statements; rather, Walter's attorney merely argued that certain issues raised by Colleen had already been decided in the probate court's previous opinion. Further, there is no indication that the probate court relied on these statements in approving the proposed order; rather, the record shows that the probate court was skeptical of Walter's attorney's argument, noting that the reason an order had not already been entered was because certain objections had been raised for its consideration. We find no merit to Colleen's argument. See *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 208; 544 NW2d 727 (1996) (noting that the elements of fraud or misrepresentation include that the representation was false, the party making it was aware that it was false, and that the recipient of the statement acted in reliance on that statement).

## B. VALUE OF LAND CONTRACT

Colleen also argues that the probate court erred by approving the sale without a determination of the value of the land contract. We disagree. In the opinion regarding the value of the land contract, the probate court found that there was a $101,266 balance at the time of Gladys's death, but acknowledged the difficulty of the valuation because of "the extremely unusual terms of this contract coupled with the fact that no record of payments was ever kept, either by the decedent or by Walter." The probate court noted that, after Gladys's death, Walter continued to live at the property without making payments on the contract, but "assisted in many ways with estate property, paying bills (specifically including the decedent's mortgage obligation on the [West Branch] property), and performing maintenance to the decedent's house and car."

The probate court determined that the fair market value of the West Branch property was $83,100, with $26,000 remaining on Gladys's mortgage for the property, and that the estate and Walter remained subject to the land contract, on which Walter owed $103,386. However, the probate court determined that it would be "ridiculous" for Walter to pay $103,386 when the property was worth far less, and that Walter might well "forfeit" his interest and buy the property from the estate. The probate court stated that the land contract would not be valued at $103,386, because the fair market value of the asset was only $83,000 minus the remaining $26,000 mortgage.

The probate court discussed the credit that Walter sought to claim against the land contract, and determined that Walter could not claim his expenditures to maintain and improve the West Branch property, or the taxes he paid on that property, because these were his obligations under the land contract, not the obligation of the estate. The probate court held that Walter could properly be credited with contributions to the estate for mortgage payments on the property made after Gladys's death, paying for repairs to Gladys's vehicle, paying bills for the estate (including funeral expenses), and for expending funds on maintaining and improving the Houghton Lake Heights property after her death, and encouraged the parties to agree to convey the West Branch property to Walter, subject to the mortgage, in accordance with Gladys's wishes. The probate court also noted that the apparent $57,000 value in property that Water received by purchasing the land was offset by his waiver of claims regarding the value of the share he would have received from the estate from selling the Houghton Lake Heights property, and the expenses that he would claim against the estate.

The probate court made the factual finding that the credit for expenses plus Walter's waiver of his share of a distribution from the sale of the Houghton Lake Heights property equaled the market value of the West Branch property. Colleen has not demonstrated that it clearly erred by doing so. *Temple Marital Trust*, 278 Mich App at 128. Accordingly, Colleen has not demonstrated that the probate court abused its discretion approving the sale of the West Branch property to Walter. *Id*.

## C. STIPULATION

Colleen also argues that the probate court erred by approving the sale of the West Branch property without the agreement of all of the heirs. We disagree. In support of this argument, Colleen cites the probate court's statement that the sale "can only be accomplished by agreement of the parties," and the probate court's encouragement of the parties to "consider a stipulated resolution to this effect." However, David and Walter did agree on a settlement to convey the property to Walter for consideration. As noted, the probate court's approval of the terms of this settlement was not clearly erroneous or an abuse of discretion. Further, the terms of the will did not require unanimous agreement on the distribution of property; rather, the will authorized David, as the personal representative, "to sell, contract for the sale of or otherwise treat with all property as in his judgment shall be for the best interest of my estate." David's agreement to sell the property to Walter was an act in furtherance of the interests of all beneficiaries. See MCL 700.1209.[3] Despite the probate court's encouragement to the parties to seek a resolution that satisfied everyone, it was not necessary for the beneficiaries to agree to the sale, and the probate did not err by failing to interpret the language of the will as requiring unanimous consent. *Reisman Estate*, 266 Mich App at 527.

## IV. SALE OF THE HOUGHTON LAKE HEIGHTS PROPERTY

Colleen also argues that the probate court erred by approving the sale of the Houghton Lake Heights Property. We disagree.

At the 2021 motion hearings on the motion to remove the notice of lis pendens, David's attorney argued that the probate court should invalidate Yvonne's notice of lis pendens on the Houghton Lake Heights property because it was threatening a sale for $92,000 to an unrelated buyer, no lawsuit against David had been filed, and it was not properly served. David argued that the Houghton Lake Heights property should be sold, and that there had been only one arm's-length

---

[3] MCL 700.1209 states as follows:

> For the purpose of granting consent or approval with regard to the acts or accounts of a personal representative, including relief from liability or penalty for failure to post bond or to perform other duties, the sole holder or all coholders of a presently exercisable or testamentary general or special power of appointment, including 1 in the form of a power of amendment or revocation, are deemed to act for beneficiaries to the extent their interests, as permissible appointees, takers in default, or otherwise, are subject to the power.

offer to buy it since it was listed in 2010. Yvonne, Gary, and Colleen objected on the grounds that the home should be purchased by family members, and that the fair market value was greater than $92,000, citing a neighboring property listed for sale at $135,000. The probate court noted that Yvonne, Gary, and Colleen could own the home by paying David his $23,000 share of the $92,000 offer, plus $10,000 for the reimbursement of repairs to Walter, if they wished to do so, but they had not made such an offer. The probate court also determined that there was a fair market, arm's-length offer for the property, and, with no other concrete offers, ordered the sale of the property, and also that the lis pendens be released because it was improperly executed and not followed through on. The probate court also denied motions for an accounting, and to appoint a receiver. The probate court further ordered that the balance of the proceeds from the sale be equally divided among Yvonne, Colleen, Gary, and David. Colleen argues that the probate court erred in several respects by ordering this sale; we will discuss each of them in turn.

## A. VERIFICATION

Colleen argues that the probate court should not have approved the sale without seeing the offer or verifying its terms. We disagree. Colleen cites no authority for the proposition that the probate court was required to independently verify the representations of a particular witness or attorney. In this case, David's attorney represented to the probate court that there was an offer for the Houghton Lake Heights property for $92,000 in cash that had been accepted. Colleen has presented no evidence that this information was false or inaccurate, or otherwise should not have been credited by the probate court. We find no clear error in the probate court's factual finding regarding the existence of an offer to purchase the property. *Temple Marital Trust*, 278 Mich App at 128.

## B. MOTION TO APPOINT RECEIVER

Colleen also argues that the probate court erred by denying her request for a receiver, or to establish an escrow account to protect the funds from the sale. We disagree. The probate court addressed the request as follows:

> I believe there's another motion . . . requesting the appointment of a receiver and an account. I'm going to deny those motions, even though they were not properly motioned up for today. There's absolutely no need to appoint a receiver . . . . There's one piece of property that's now been ordered by the court to be resolved. There is no other property left in this estate . . . . So the motion for the appointment of receiver is denied as not being a valid request to begin with. And as to requesting of an accounting there will be a closing statement here. If the parties object to the closing statement they can do so and we'll have a hearing on that.

The probate court ordered the "proceeds to be deposited into the estate of and then after any expenses that it be dispersed to the heirs."

Colleen asserts on appeal that the probate court's failure to appoint a receiver "literally turned the [personal representative] loose with the keys to the cash register" and asserts that, at the time of this appeal, David had not distributed the funds from the sale to the beneficiaries. As we will discuss later in this opinion, this issue, if still present, may be explored on remand. But

Colleen does not explain why a receiver was required to handle a relatively simple transaction, or why the probate court's order that the proceeds of the sale be deposited with the estate and dispersed to the heirs was insufficient given the circumstances of the case. Because the imminent sale of the Houghton Lake Heights property constituted the disposition of the final asset of the estate, and the receipt, deposit, and distribution of the proceeds was uncomplicated, the probate court did not err by denying Colleen's motion to appoint a receiver. *Temple Marital Trust*, 278 Mich App at 128.

## C. OPPORTUNITY TO PURCHASE

Colleen also argues that the probate court erred by approving the sale of the Houghton Lake Heights property without allowing the other heirs an opportunity to purchase it. We disagree with her characterization of the record. David's attorney noted that there had been only one offer to buy the property since it was listed. The probate court noted that Yvonne, Gary, and Colleen could own the home by paying the personal representative a total of $33,000, but had not made such an offer, stating: "There is no other legitimate offer made for the property. There is request that maybe it should be assigned to everybody and they'll work out a deal, but they want nothing firm, nothing concrete. There is one concrete offer for the sale of this property." The record shows that no concrete offer was put forth by any heir to purchase the property in nearly 10 years; we conclude that this span of time represented a sufficient opportunity for any heir who wished to purchase the property, and the probate court did not err by approving the sale without allowing additional time for offers from heirs to the estate. *Id.*

## D. EXPENSES

Colleen next argues that the probate court erred by approving David's request to reimburse Walter $10,000, after the sale, for repairs, utilities, and maintenance that he paid for on the Houghton Lake Heights property. We agree.

In the order approving the sale of the West Branch property to Walter, the relevant consideration provided by Walter included "waiver of all present and future claims for additional estate property distribution by the purchaser," and "waiver and release of all present and future claims against the estate for payments, services or other actions by the purchaser."

The probate court acknowledged the language of the order, but awarded $10,000 to Walter because "this is a separate agreement between the personal representative for actual costs incurred in maintaining the property and trying to preserve" the Houghton Lake Heights property prior to its sale. We conclude that it erred by doing so. Awarding Walter $10,000 for maintaining the Houghton Lake Heights property was directly opposed to the agreement for him to purchase the West Branch property. Even though David and Walter had agreed to reimburse Walter's caretaking of the property, Walter had specifically waived his claim to these expenses. The probate court's statement that Walter has "a right to a claim that's been settled" with David was contrary to Walter's agreeing to a "waiver and release of all present and future claims against the estate for payments, services or other actions by the purchaser." There was no carve-out for expenses incurred by Walter in maintaining the Houghton Lake Heights property for a certain period of time. Therefore, the probate court erred by ordering that Walter "be paid $10.000.00 from proceeds in satisfaction of all claims against the estate, now and in the future, for the costs, services

and expenses he has requested." On remand, the probate court should amend its June 1, 2021 order accordingly.

## E. ASSET DISTRIBUTION

Colleen also argues that the probate court erred by issuing a final order disposing of the last assets of the estate when no distributions of the estate's funds had been made to the estate's heirs. We agree. Colleen makes no mention of the distribution of personal property, and there is no indication in the record whether the estate's personal property was distributed. Colleen further notes that the issue of mineral rights was not addressed in any court order. We conclude that this issue should be explored on remand. While it appears from the record that the probate court held that mineral rights for the West Branch property accompanied the sale to Walter, none of the probate court's orders make reference to the payments for oil leases that were listed on the amended inventory. There is no evidence that the oil lease payments were factored into the agreement for Walter to purchase the West Branch property. The lack of mention of the oil leases in any order of the probate court, and the representation of David's attorney that a 2021 payment to the estate had not been resolved, indicate that there was no resolution regarding the distribution of the oil rights. Because the oil leases and personal property were listed property, on remand, the probate court should address their distribution.

As we noted earlier, Colleen also asserts on appeal that the proceeds from the sale of the Houghton Lake Heights property have not been distributed. The probate court's "order after hearing on motion to remove lis pendens" directed David to deposit and distribute the proceeds of that sale. On remand, the probate court should determine the status of the distribution of the proceeds from the sale of the Houghton Lake Heights property.

In sum, we conclude that the probate court erred by ordering that the estate pay Walter $10,000 for maintaining the Houghton Lake Heights property, because it is contrary to an earlier agreement, and also erred by not accounting for the distribution of oil leases that were listed as estate property. On remand, the probate court should resolve any of these issues that are still outstanding, as well as the status of the distribution of the proceeds from the sale of the Houghton Lake Heights property. *Temple Marital Trust*, 278 Mich App at 128.

## V. DENIAL OF CONTEMPT MOTION

Colleen also argues that the probate court erred by denying the motion to hold David in contempt and remove him as personal representative of the estate. We conclude that the probate court did not err by holding that a contempt proceeding was not an appropriate vehicle for the address of these issues, and that the probate court may address them on remand to the extent they remain. The personal representative has a fiduciary duty to each devisee, heir, and beneficiary. MCL 700.1212(1). See also MCL 700.1104(e) and MCL 700.3703(1). " 'A fiduciary stands in a position of confidence and trust with respect to each heir, devisee, beneficiary, protected individual, or ward for whom the person is a fiduciary.' " *In re Schwein Estate*, 314 Mich App 51, 59; 885 NW2d 316 (2016), quoting MCL 700.1212(1). Those fiduciary duties include " 'undivided loyalty; impartiality between heirs, devisees, and beneficiaries; [and] care and prudence in actions.' " *In re Estate of Stan*, 301 Mich App at 447, quoting MCL 700.1212(1). The personal

representative " 'shall keep each presumptive distributee informed of the estate settlement,' " and must regularly " 'account to each beneficiary by supplying a statement of the activities of the estate and of the personal representative.' " *In re Estate of Stan*, 301 Mich App at 447, quoting MCL 700.3703(4).

In this case, Yvonne, Colleen, and Gary filed a motion to show cause why David should not be held in contempt, alleging that he sold Houghton Lake Heights property during a 21-day automatic stay following the probate court's order approving the sale, and had failed to distribute the proceeds to them. The probate court denied the motion to show cause because the allegations "are administrative in nature regarding the estate and are not properly brought . . . in contempt proceedings. Further, no court order has been violated, or ignored, to necessitate enforcement powers of the Court." This motion was filed on July 15, 2021. The probate court authorized the sale on June 1, 2021, and Yvonne, Colleen, and Gary asserted via their motion that David conveyed the Houghton Lake Heights property to a buyer on June 22, 2021. Therefore, the property was conveyed on the 21st day following the order authorizing the sale. However, MCR 2.614(A)(1) provides as follows;

> Except as provided in this rule, execution may not issue on a judgment and proceedings may not be taken for its enforcement until 21 days after a final judgment (as defined in MCR 7.202[6]) is entered in the case. If a motion for new trial, a motion for rehearing or reconsideration, or a motion for other relief from judgment is filed and served within 21 days after entry of the judgment or within further time the trial court has allowed for good cause during that 21-day period, execution may not issue on the judgment and proceedings may not be taken for its enforcement until the expiration of 21 days after the entry of the order deciding the motion, unless otherwise ordered by the court on motion for good cause. Nothing in this rule prohibits the court from enjoining the transfer or disposition of property during the 21-day period.

Because the probate court's order approving the sale of the Houghton Lake Heights property was a final order under MCR 7.202(6)(a)(i), and a motion for reconsideration had been filed, it does appear that, if the sale took place on June 22, 2021, that sale may have been in violation of the court order. However, this Court simply lacks an adequate record with which to conclude that such a violation occurred, and, if it did, to fashion an adequate remedy for the violation. Similarly, Colleen's statement that the proceeds have not yet been distributed lacks factual support. But we agree with the probate court that these issues are more appropriately raised in regular motion practice before it, not in a contempt proceeding. The Estates and Protected Individuals Code (EPIC), MCL 700.1100 *et seq.*, contains procedures to petition a court for removal of a personal representative or distribution of estate assets. See *In re Kramek Estate*, 268 Mich App 565, 575; 710 NW2d 753 (2005); see also, e.g., MCL 700.3611(1); MCL 700.3952. To that end, the probate court may address these issues, to the extent they remain, on remand.

## VI. JUDICIAL BIAS

Colleen further argues that Judge Jernigan demonstrated judicial bias, either against her, Yvonne, and Gary, or in favor of David, and that the matter should, accordingly, be remanded to

a different judge. We disagree. No party raised this issue below or moved to disqualify Judge Jernigan,[4] and this issue is therefore not preserved for appeal. We review unpreserved issues for plain error. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

A trial judge is presumed impartial, and the party who asserts otherwise has a heavy burden of overcoming that presumption. *Cain v Dep't of Corrections*, 451 Mich 470, 497; 548 NW2d 210 (1996). Remand to a different judge is appropriate where the original judge would have difficulty setting aside previously expressed views or findings, or if reassignment is advisable to preserve the appearance of justice and would not entail excessive waste or duplication. *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004).

In this case, Colleen argues that Judge Jerrigan exhibited bias against her by authorizing the sale of the Houghton Lake Heights property without protecting the proceeds from the sale by appointing a receiver or other means. However, as discussed, Colleen has not demonstrated that approving the sale of the Houghton Lake Heights property was error. Moreover, although Colleen cites several instances where Judge Jernigan ruled against her, mere rulings against a party are not grounds for disqualification. *Bayati*, 264 Mich App at 603. Colleen has not cited any comments or conduct by Judge Jernigan that indicates bias, or would otherwise have difficulty deviating from his written opinion on remand. We conclude that there is no need for proceedings on remand to be presided over by a different judge.

## VII. CONCLUSION

We affirm the probate court's approval of the sale of the West Branch and the Houghton Lake Heights property. We vacate the portion of the probate court's June 1, 2021 order requiring the estate to pay Walter $10,000 for maintaining the Houghton Lake Heights property. We remand for the probate court to amend its order to reflect this ruling, as well as to make a determination regarding the distribution of oil leases that were listed as estate property, and to determine the status of the distribution of the proceeds from the sale of the Houghton Lake Heights property and any other undistributed estate property, should any of these issues remain.

---

[4] Grounds for disqualification are provided in MCR 2.003(C)(1):

> Disqualification of a judge is warranted for reasons that include, but are not limited to, the following:
>
> (a) The judge is biased or prejudiced for or against a party or attorney.
>
> (b) The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Mark T. Boonstra