ROBERT JOHNSON v. ALCYONE D. WARREN.

*Will—Condition precedent.*

74    491
f123  148
74    491
f124  249

1. A testator devised life-estates in 80 acres of land to his mother and sister, and the fee to defendant on arriving at his majority, upon condition that within one year from the date of the will he went to live with the testator's sister as her own (son), to be under her sole guidance and guardianship until of full age, and upon his failure so to do the land was to belong to relatives named in the will. In a suit to construe the will it is held that it gave the defendant no interest until he should arrive at the age of 21, nor unless he within the year went to live with the testator's sister, and continued under her sole

guidance and guardianship until he was 21 years old, which condition is reasonable and intelligible, and, being also lawful, must control the estate.

2. How. Stat. § 5562, refers only to grants and conveyances, and can only cover conditions which are to be complied with *after* the estate vests, referring expressly to estates which may be forfeited by non-compliance, and not to estates which have not been created by the conveyance in the grantee.

3. When a condition is one of fact, and not left open to option or contingency, it makes no difference why it is not performed, when the only right that the devisee has to receive any bounty from the estate is found in the words of the will.

Appeal from Ingham. (Peck, J.) Argued February 13, 1889. Decided April 19, 1889.

Bill to quiet title. Complainant appeals. Decree dismissing bill reversed, and relief granted as prayed. The facts are stated in the opinion.

*Q. A. Smith (Huntington & Day,* of counsel), for complainant.

*R. A. Montgomery,* for defendant.

CAMPBELL, J. This suit was brought to quiet title to land under a will, which defendant is charged with claiming, but which he has taken no steps to recover. The whole contest is over the construction of a devise. In May, 1854, Horace Johnson, being an unmarried man past middle life, residing in the township of Locke, Ingham county, Mich., and owning real and personal property in that township, and in the adjacent township, made his will, and died shortly afterwards. He left surviving him a mother advanced in years, a sister, Lucinda, unmarried and 50 years old and upwards, two brothers, a married sister, Mrs. Mary Stevens, and two nephews named in the will, who were William Johnson, a brother's son, and William Warren, the son of a deceased sister. The

mother and Lucinda lived together. By this will Horace Johnson gave to his sister Lucinda absolutely all of his realty and personalty except two 40-acre lots joining each other, but lying in two townships,—one being the S. W. ¼ of the S. W. ¼ of section 34, in township 5 N., of range 2 E.; and the other being a parcel 100 rods deep by 64 wide, in the north-west corner of section 3, in township 4 N., of range 2 E. These two 40's, making 80 acres, he devised as follows, after giving his mother and Lucinda an estate for their lives:

"I also give and bequeath to Alcyone Deloss (oldest son of Mrs. Rosetta Warren) the above-described eighty acres of land when my mother and sister shall have done with it, and when he shall arrive at the age of twenty-one, on the following conditions, to wit: That he shall come within one year from the present date and live with my sister Lucinda as her own, to be under her sole guidance and guardianship until he shall arrive at the age of twenty-one. But, in case the above-named Mrs. Warren's son does not comply with the above conditions, then the said Alcyone shall not be entitled to the said premises, but it shall be divided among my brothers which are now living, sister Mary, and my two nephews, William Johnson and William Warren."

Lucinda was made executrix. At this time William Warren, who was son of Gillman Warren by his first wife, who was testator's sister, and was half-brother of defendant, who was not related to testator, was living, and continued to live, with Lucinda till he grew up. At this time he was about ten years old, and defendant about five. Lucinda survived her mother, and died in 1875, being more than 70 years old. Defendant was then 25 or 26 years old. He had never been adopted by Lucinda, and had until manhood lived in his father's family. He had made occasional visits at Lucinda's, and had occasional employment there in such chores and work as he could do at haying and similar occasions. His

father estimated that these visits might amount to about
two weeks in a year.    There is no evidence that he was
ever treated as a member of the family.    There is a direct
conflict of testimony, which cannot be reconciled, on sev-
eral questions, including the inquiry how far the contents
of the will were known, and whether defendant's mother
was disposed to part with defendant.    There is a strong
probability that the nature of this devise was known gen-
erally to all concerned.    There is positive proof of it
which is more in harmony with the probabilities of neigh-
borhood gossip  than  concealment  would  be,  and  the
whole family of the testator certainly knew it.   Very pos-
sibly defendant, who was then a little boy, may not have
understood about it.    The testimony that his mother did
is direct and probable.    In the view we take of the case,
it will not be necessary to discuss the contradictions,
which are certainly sharp enough. ˙ Mrs. Warren was
dead some time before suit was brought.

The court below came to the conclusion that Lucinda
had always treated defendant with such care and guidance
as she supposed would satisfy the will, and be most
advisable for the boy, and he submitted to it, and that
she was satisfied with it.   We cannot find in the record
any testimony tending to show, and still less to convince
us of, any maternal or filial relations whatever between
these parties, or anything to indicate that Lucinda ever
regarded defendant as her ward or child by adoption.
Upon the argument this was not much urged, but it was
claimed the condition was nominal, and not material, and
that Lucinda did not see fit to insist on it and waived
it.

The will is not in the least ambiguous.   It gives to
Lucinda and her mother life-estates; thus covering the
whole time during which alienation could be restrained.
It gives to the brothers, sister, and nephews the remainder

in fee, in case defendant did not become entitled to it. It gave no interest to defendant until he should arrive at the age of 21, nor unless he within a year went to live with Lucinda as her own, and continued under her sole guidance and guardianship until he should be 21 years old. The whole remainder was contingent unless he reached the age of 21, and did so under her guardianship. If she died before he reached that age, any further restraint on alienation would be void, and the other remainder-men would take at once. There could be no further postponement. It is impossible to regard this will as creating a present vested estate in defendant. If the conditions amount to anything, they are conditions precedent, and, if valid, the estate never vested in defendant.

It was claimed on the argument that the conditions were nullities, under section 5562 of Howell's Statutes, which reads as follows:

"When any conditions annexed to a grant or conveyance of lands are merely nominal, and evince no intention of actual and substantial benefit to the party to whom or in whose favor they are to be performed, they may be wholly disregarded, and a failure to perform the same shall in no case operate as a forfeiture of the land conveyed subject thereto."

It is sufficient to say that this section refers only to grants and conveyances, and can only cover conditions which are to be complied with after the estate vests. It refers expressly to estates which may be forfeited by non-compliance, and not to estates which have not been created by the conveyance in the grantee. It can have no reference to devises. Previous sections refer repeatedly to grants and devises as distinct things, and negative any idea that wills and grants can mean the same thing in this section. In chapter 1, on the interpretation of statutes, the words *grantor* and *grantee* are confined to parties

to deeds. Section 2, How. Stat. In the chapter on alienation by deed it is provided that the term "conveyance" shall cover all writings conveying or otherwise affecting interests in lands, "except *wills*, leases for a term not exceeding three years, and executory contracts for the purchase and sale of lands." Id. § 5689. There is nothing in our statutes which would allow us to deal with conditions in a will in any different way from what would be proper without them, and courts have no power to make new wills for testators, and disregard such lawful conditions as they may impose. No one can doubt that the conditions imposed here were lawful.

We have no means of knowing, except by the will, why the testator chose to impose these conditions, but they certainly are not frivolous. The plain meaning is that, instead of creating a remainder over after Lucinda's death in favor of his own collateral heirs by blood, he was willing to select as the object of his bounty a particular heir by adoption, if he should be taken into his sister's care so young and raised to manhood so exclusively under her charge that he should be in all respects the same in family surroundings and training as if he were her own son. The language bears no other meaning. He did not mean to give the property to defendant, except as an adopted kinsman reared in the family. It was not as defendant's mother's son, but as testator's sister's child by nurture, that he chose to benefit him; and, as a minor cannot choose for himself, it was not left to his volition. Neither was Lucinda authorized to waive anything. The estate was devised over to others, unless these relations in fact existed. He did not mean to give his property to a stranger by nurture, and he preferred his brothers and sister and his nephews by blood to any but an adopted relative so nurtured as to have the same family attachments. Such a condition is reasonable and intelligible.

It is also lawful, and, being lawful, must control the estate. Courts have not ventured to substitute their own speculations for the clearly expressed will of the testator, nor have they felt authorized to inquire curiously into the reasons of what is not ambiguous. If the desired result does not come about, we are only concerned with that fact. There may be possible cases where conditions merely *in terrorem*, and not accompanied by bequests or devises over, have been disregarded. Even those have always been conditions subsequent, where the want of a bequest over has indicated that no forfeiture was intended. Where the condition precedes the estate, and where there is also a devise over in case of failure, there is no foundation for any rule disregarding it.

The fact that the conditional beneficiary is not in fault for non-performance can make no difference. In the present case he could not have chosen for himself. The entire condition was to be performed during his legal incapacity; and when the condition is one of fact, and not left open to option or contingency, it makes no difference why it is not performed, when the only right that the devisee has to receive any bounty from the estate is found in the words of the will. See Co. Litt. 206b; *Roundel v. Currer*, 2 Brown, Ch. 67; *Boyce v. Boyce*, 16 Sim. 476; *Hodge's Legacy*, L. R. 16 Eq. 92; *Powell v. Rawle*, L. R. 18 Eq. 243; *Astley v. Earl of Essex*, Id. 290; *Bertie v. Falkland*, 1 Salk. 231, 2 Vern. 333.

The decree should have been for complainant. It must be reversed, and a decree rendered here in accordance with the prayer of the bill, with costs of both courts.

The other Justices concurred