### PEARL v. LOCKWOOD.

WILLS—FORFEITURE OF LEGACY—EVIDENCE.

> Testator devised his property to his wife for life, and provided for a legacy of $700 to his nephew, who was living with him, " if the said [nephew] shall continue to live with my family, and on my estate, until he shall arrive at the age of 21 years, and labor as faithfully as he has labored for me." Before coming of age, the nephew left the family of his aunt, and went to work on a farm for wages. At the time he left, he was warned that by so doing he would forfeit his legacy. He testified that his aunt urged him not to leave at that time, but that, when he insisted, she made no objection. He did not file a petition for the allowance of the legacy until 25 years after he became of age. *Held*, that a finding that he had forfeited the legacy was warranted.

Error to Calhoun; Smith, J.   Submitted January 3, 1900.  ˙Decided March 6, 1900.

Petition by Manford Pearl to the probate court for an order directing Augustus Lockwood, as executor of the last will and testament of John Pearl, deceased, to pay to petitioner a certain legacy.   The petition was granted, and defendant appealed to the circuit court.   From a judgment for defendant, petitioner brings error.   Affirmed.

*Herbert E. Winsor*, for appellant.

*William H. Porter* and *Hulbert & Mechem*, for appellee.

MONTGOMERY, C. J.   In 1858 Manford Pearl, then a small boy of about 8 years of age, went to live with his uncle, John Pearl, who was a farmer near Marshall, in Calhoun county, Mich.   Manford's father had died previous to that time, and his mother remarried and moved away, leaving Manford with his uncle, John Pearl.   From that˙ time Manford was brought up by his uncle on the farm, and was regarded as one of the members of the family.   Manford became his uncle's assistant, remaining there until John Pearl died, the 1st day of March, 1868. Manford Pearl was 18 years of age on the 14th day of April, 1868.   On the 14th day of December, 1867, John Pearl made and executed his will, wherein he devised and bequeathed to his wife, Theodosia Pearl, the use of his ˙farm on which he lived, and also all of his household furniture, stock, farming tools, and utensils, and all crops upon the farm belonging to him at the time of his decease, and then directed that his executors maintain and educate the youngest daughter, Ella, until she should arrive at the age of 18, and then pay her the sum of $700; stating that he had before given his daughters Eliza Adams, Julia Lockwood, and Martha Hulett the sum of $700 each.   He then states:

"My nephew, Manford Pearl, is now living with me, and has lived with me since he was a child.   Now, there-

fore, I hereby request and direct my executors, if the said Manford shall continue to live with my family, and on my estate, until he shall arrive at the age of twenty-one years, and labor as faithfully as he has labored for me, to clothe him decently and properly, and send him to school in the winter seasons, until he is twenty-one years of age, and then pay him the sum of seven hundred dollars out of my estate. And I hereby charge my estate with the support, maintenance, and education of my said daughter Ella and my said nephew, Manford, as aforesaid, and also said legacies of seven hundred dollars to each of them."

Then, after making some other bequests to other children, he authorized and empowered his executors, upon the request of his wife, Theodosia, to sell and convey his farm for the greatest sum of money they could obtain for the same, but provided that his wife in that event should have the use of the moneys obtained from the farm for and during her natural life, and the proceeds to be divided equally among his four daughters, and then adds:

"And it is further my will and desire that the payment of the legacy of seven hundred dollars hereinbefore bequeathed to my nephew, Manford Pearl, is to be left entirely at the discretion of my executors, whether he is entitled to the same according to the conditions annexed to said legacy; and they may pay him a part in cash, and a part in property at its fair value, if they may so elect."

He nominated his wife, Theodosia Pearl, and his son-in-law Augustus Lockwood, jointly and severally, to be executrix and executor of the will. On February 17, 1868, he made a codicil to the will, referring to the will, and then stated:

"Having since that date [December 14, 1867]—that is, today—sold my farm in Emmet, of two hundred acres of land, for the sum of twenty thousand dollars, to George H. Barber, and taken in part payment therefor a house and lot of seven acres of land in the city of Marshall, at the sum of seven thousand five hundred dollars, and the balance in other securities: Now, I therefore make this codicil or explanation to my said will and testament: It is my will and desire, and I hereby order and direct, that my said last will and testament, dated the 14th day of

December, 1867, be carried into effect, as near as may be, notwithstanding the sale of my said farm, and that my wife, Theodosia Pearl, shall have, as near as may be, the same amount of property, and in the same way, as is provided for her in my said last will and testament in case of the sale of my said farm by my executors."

This will was admitted to probate on the 7th day of April, 1868; and Theodosia Pearl, his wife, and Augustus Lockwood, his son-in-law, were appointed executors of the will by the probate court of Calhoun county on the said 7th day of April, 1868, and they jointly entered upon the execution of their trust as executors. They have not been discharged as executors, nor the estate closed. Theodosia Pearl, one of the executors of the will, died on the 20th day of January, 1896. On the 2d of May, 1896, Manford Pearl filed his petition in the probate court for the county of Calhoun, in the estate of John Pearl, deceased, asking the probate court to direct the surviving executor to pay the legacy of $700 as provided in the will of John Pearl. The petition was heard in the probate court on the 27th day of July, 1896; and, after hearing the evidence in the case, the probate court ordered the executor of the estate of John Pearl, deceased, to pay to the petitioner, out of said estate, the sum of $700 (that being the amount of the legacy provided for him in the will of said deceased), from which order the surviving executor appealed. On the trial of the appeal the circuit judge made a finding of fact and law reversing the finding of the probate court, and entering a judgment against the petitioner. Petitioner brings error.

Among the findings of the circuit judge were the following:

"After the death of John Pearl, and in April, 1868, the family moved from the farm to the land (consisting of seven acres) in the city of Marshall, where the widow remained for several years; Manford Pearl going with the family. The family of the deceased consisted at this time of the widow and daughter Ella. A horse and a cow were kept on the premises, and there was some work,

123 MICH.—10.

in the way of caring for them, and the cultivation of the garden, and the general care of the home. Manford Pearl left the family in May, 1868, and went to work for the executor, Augustus Lockwood, by the month, on his farm, and continued to live with him from that time until August, 1870. He worked seven or eight months of each year after that time for $20 per month. The balance of the time he went to school, and did chores for his board. In August, 1870, he went to Kansas. Mr. Lockwood was a farmer, and lived and worked on his farm, which was about three miles from the city of Marshall. He did not go to Lockwood's with the consent of Mrs. Pearl, the widow. She desired him to remain with her and go to school in Marshall, and suggested that during the summer vacation he might go into the country and work. He went away, however, in May, 1868, and never returned to the Marshall home to live. The relations between the widow and claimant continued friendly, and he visited her frequently while he lived at Lockwood's. During this time the widow employed Lockwood to do work about the Marshall home, and some of his work was done by the claimant, or with his assistance, as an employé of Lockwood. The executor, Lockwood, testified on the trial that he told Pearl when he came to work for him that, if he did that, he would forfeit his legacy; and he also testified that he and Mrs. Pearl, acting for the estate, had a conversation after Pearl became of age, and decided that he had forfeited his legacy, and that the widow should so inform him. Claimant was then in Kansas. Claimant admits that his aunt, Mrs. Pearl, wrote him in 1874 that he had not complied so as to entitle him to his legacy, and says that at one time preceding that, and after he went West, she sent him $100."

The entire testimony is returned, and petitioner has excepted to certain of the findings of fact, as well as to the conclusions of law. It is contended that the evidence did not warrant the finding that Theodosia Pearl did not desire the petitioner to go to Lockwood's to work, or the finding that the two executors determined that petitioner should not have the legacy, and that notice of this decision was given to petitioner. It is a question of some importance whether petitioner left Mrs. Pearl's house with her consent or approval. The only witness to the conversa-

tion, other than the parties, is petitioner, Mrs. Pearl being dead.  He testified:

"My aunt did not raise any objections to my going to Lockwood's.  She suggested that I could go to work in harvest and get some clothes; wages was good.  I didn't wait till harvest.  I insisted she let me go now, and she didn't object.  She said, if I would wait till harvest, why then I could go; but I prevailed on her to consent, and she didn't make any objection if I was determined to go. I told her I didn't like to live in town.  She made no objection."

And on cross-examination:

"At the time I went in the country to work, Mrs. Pearl thought it would be better for me to go to school. She did not object to my going.  I did not go in opposition to her wishes."

Mr. Lockwood testified that before he employed the petitioner he told him that he would forfeit his legacy if he left home, and that petitioner replied, in substance, that he could not help that; he was going to get out of town.

It is apparent from the petitioner's own testimony that it was not Mrs. Pearl's desire that he leave home.  True, she did not restrain him; but it is apparent from his own testimony that it was her wish that he should remain with her and attend school.  Certainly, if the testimony of Lockwood is to be credited, petitioner was not misled into the course he took in failing to comply with the conditions imposed by the will.  It appears that, instead of complying with the terms of the will, petitioner was in fact earning wages, working for Lockwood, and that Mrs. Pearl had another person employed to do chores.  We have no doubt that the requirement that petitioner should continue to live with the family until 21 years of age, and labor as faithfully as he had for the testator, was a condition precedent.  It is unnecessary to decide whether performance would have been excused if petitioner had been misled as to the requirements of the will.  The circuit

judge evidently found that he was not misled, but had affirmative notice that he would forfeit his rights by leaving the home of Mrs. Pearl. In view of the long delay in asserting the claim, we do not think the conclusion of the circuit judge was unwarranted. He saw the witnesses, and noted their appearance on the stand, and was better able to judge of their credibility than we are. The case is ruled by *Johnson* v. *Warren*, 74 Mich. 491 (42 N. W. 74).

Judgment affirmed.

The other Justices concurred.