*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THE BERNARD BOUTET REVOCABLE
LIVING TRUST.

LYNN MARINE-ADAMS, Trustee,

and

DARRELL BOUTET, KEITH BOUTET, and
CHRISTINE N. HUGHES,

          Appellees,

v

DIANE BOUTET TENEROWICZ,

          Appellant.

UNPUBLISHED
January 25, 2024

No. 364575
Wayne Probate Court
LC No. 2021-864392-TV

Before: GLEICHER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

In this trust action, appellant Diane Boutet Tenerowicz appeals as of right the probate court's order granting the petition to forfeit Diane's share under her father's trust. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

On November 18, 2005, Bernard Boutet, as settlor, established the Bernard R. Boutet Revocable Living Trust (the Trust). The Trust was drafted by attorney M. Ted Kiriazis. Bernard[1] and his wife, Marilyn Boutet, were the original co-trustees. A First Amendment to the Trust was

---

[1] Because of the shared last name among the various family members involved in this action, we will refer to individual family members by first name in this opinion.

also executed on November 18, 2005. Marilyn died on December 1, 2009. The original beneficiaries of the Trust, following Bernard[2] and Marilyn, were their three children: Darrell Boutet, Dale Boutet, and Diane. Dale died on April 29, 2014. A Second Amendment to the Trust and a Third Amendment to the Trust were executed on June 14, 2019.

In relevant part, the Second Amendment to the Trust allocated the distributions of trust assets upon Bernard's death and further stated that Kiriazis was appointed to become the successor trustee upon Bernard's death.

At issue in this appeal is the language of the Third Amendment to the Trust, which was signed by Bernard and stated in relevant part as follows:

> **FIRST**: Section 7.2(f)[3] of the Trust Agreement is hereby amended and restated in its entirety to read as follows:
>
> (f) Except as otherwise provided below, Twenty-Five percent (25%) to Settlors' daughter, DIANE TENEROWICZ. Notwithstanding any provision of this Agreement or Applicable Law to the contrary, *if DIANE TENEROWICZ does not take the Required Action (as defined below), then all beneficial interests, powers and rights of every kind and nature which she otherwise has under this Agreement shall be forfeited, including the allocation herein provided.* If the allocation is forfeited in accordance with the above, then the percentages in Section 7.2 shall be revised as follows:
>
> > (1) Zero percent (0%) to Settlor's daughter, DIANE TENEROWICZ.
> >
> > (2) Forty percent (40%) to Settlor's son, DARRELL BOUTET.
> >
> > (3) Twenty-Five percent (25%) to Settlor's grandson, RYAN BOUTET.
> >
> > (4) Ten percent (10%) to Settlor's grandson, KEITH BOUTET.
> >
> > (5) Ten percent (10%) to Settlor's granddaughter, KATIE TENEROWICZ.

---

[2] Bernard's middle name was Robert, and he also apparently sometimes went by Bob or Robert.

[3] Section 7.2 was the allocation provision for Diane, as stated in the Second Amendment to the Trust. The version of 7.2(f) in the Second Amendment provided as follows:

> (f) Twenty-Five percent (25%) to Settlors' daughter, DIANE TENEROWICZ, or is [sic] she is not surviving, to her surviving descendants, per stirpes. If no descendants are surviving, then this allocation shall lapse and the assets shall be allocated to the other individuals (or their descendants, if applicable) named in this Section 7.2, then surviving, in the same proportions as provided herein.

(6) Five percent (5%) to Settlor's step-granddaughter, STACEY CARR (the daughter of the spouse of Settlor's son, DARROLL BOUTET).

(7) Ten percent (10%) to Settlor's good friend, CHRISTINE N. HUGHES.

If DIANE TENEROWICZ is not surviving, then these assets shall be allocated to her surviving descendants, per stirpes. If no descendants are surviving, then this allocation shall lapse and the assets shall be allocated to the other individuals (or their descendants, if applicable) named in this Section 7.2, then surviving, in the same proportions as provided herein. *For purposes of this Agreement, "Required Action" means: (1) informing her son, KEITH BOUTET, as to whom his biological father was, within sixty (60) days after the death of Settlor; and (2) taking all actions reasonably necessary to provide scientific evidence (including DNA) of the biological fatherhood, including the taking of any medical examinations or testing.* DIANE TENEROWICZ shall waive all provisions of law relating to disclosure of confidential medical information insofar as such disclosure would be pertinent to the determinations required under this Section. All expenses incurred in connection with such examinations and testing shall be charged to the trust share of DIANE TENEROWICZ. [Emphasis added.]

On December 15, 2019, approximately six months after executing the Third Amendment to the Trust, Bernard died.

Shortly after Bernard's death, Diane met with Kiriazis at his office. Kiriazis discussed the Third Amendment[4] with her. Diane testified at the evidentiary hearing that she understood that the amendment required her to disclose to Keith the identity of his biological father within 60 days of Bernard's death and to take all actions reasonably necessary to provide scientific evidence of paternity within the same time period. She admitted that she understood that she would forfeit her share under the Trust if she failed to fulfill these requirements.

However, Diane did not know the identity of Keith's biological father; she only knew that Keith's father could be one of two potential men. Moreover, Keith was an adult by this point and he and Diane were apparently estranged and did not communicate with each other. Diane did not give Keith any information regarding his paternity.

On April 13, 2021, Kiriazis, as successor trustee of the Trust, filed a "Petition to Modify Trust and For Instruction," in which he sought to vacate the Third Amendment. He did not notify the other beneficiaries of the Trust. The probate court denied the petition.

---

[4] Kiriazis was also the attorney who drafted the Third Amendment pursuant to Bernard's instructions.

Subsequently, an attorney representing Keith, Darrell, and Hughes (collectively, the beneficiaries),[5] entered an appearance on their behalf and filed a petition for trust supervision, removal of Kiriazis as the successor trustee, forfeiture of Diane's share under the Trust, determination that a conflict of interest exists, and payment of attorney fees and costs. The beneficiaries alleged that although Bernard had died approximately 1 year and 9 months ago, Diane still had not provided the information to Keith regarding the identity of his biological father as she had been required to do within 60 days of Bernard's death by the terms of the Third Amendment. Thus, the beneficiaries argued, Diane had forfeited her share of the Trust pursuant to the express terms of the Third Amendment. Additionally, the beneficiaries argued that "Successor Trustee has failed to follow the terms of the Trust when he failed to take the necessary action to declare Diane's share forfeited and advocated for her by filing the Petition to Modify the Trust to vacate the Third Amendment," thereby "demonstrate[ing] a failure to fulfill his responsibilities and duty to administer the trust and fulfill his duties to carry out the specific intent and wishes of the Settlor."

The probate court granted the petition for full supervision of the Trust, removed Kiriazis as trustee, and appointed Lynn Marine-Adams as successor trustee. The court scheduled an evidentiary hearing to address the remaining forfeiture and conflict-of-interest issues.

Following the evidentiary hearing, the probate court issued a written opinion and order granting the petition to forfeit Diane's share of the Trust and denying the petition alleging that Kiriazis breached his fiduciary duty.[6] The probate court ruled that the language of the Third Amendment clearly required Diane to "to notify her son as to whom his biological father was within 60 days of Bernard's death and take all actions reasonably necessary to provide scientific evidence of his fatherhood." The court found that Diane did not take any action during the 60 days following Bernard's death to notify Keith of the identity of his biological father or the two individuals who potentially could have been his father. Additionally, the court found that Diane did not take any action to obtain DNA samples during this time either. The court concluded that Diane "failed to perform the condition precedent to receive her share from the Trust and therefore forfeits her share."

Diane now appeals. Further facts necessary to the resolution of the issues will be discussed as necessary within our analysis.

## II. STANDARD OF REVIEW

---

[5] Diane was also a beneficiary under the Trust, but the interests of these other three beneficiaries are aligned against those of Diane in this litigation. Thus, for convenience and for purposes of this opinion, we will refer to Diane by name and the other beneficiaries as "the beneficiaries."

[6] The ruling that Kiriazis did not breach his fiduciary duty is not challenged on appeal. We will only discuss matters pertaining to this ruling as necessary to address the appellate arguments raised by Diane challenging the ruling that she forfeited her share under the Trust. One of Diane's arguments is that the trial court's rulings on these two issues conflicted such that the ruling regarding her forfeiture of her share should be reversed.

-4-

"An appeal of a decision of the probate court . . . is on the record; it is not reviewed de novo." *In re Lundy Estate*, 291 Mich App 347, 352; 804 NW2d 773 (2011). "This Court reviews the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *Id*. "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Estate of Bennett*, 255 Mich App 545, 549; 662 NW2d 772 (2003). "The trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Temple Marital Trust*, 278 Mich App 122, 128; 748 NW2d 265 (2008).

The interpretation of the language in a will or trust is reviewed de novo as a question of law. *In re Estate of Reisman*, 266 Mich App 522, 526; 702 NW2d 658 (2005). "When interpreting a trust, the probate court's objective is to ascertain and give effect to the intent of the settlor," and the settlor's intent "is to be carried out as nearly as possible." *In re Estate of Stan*, 301 Mich App 435, 442; 839 NW2d 498 (2013) (quotation marks and citation omitted).

III. ANALYSIS

Diane argues that she substantially complied with the primary intent of the required action Bernard included in the Third Amendment by eventually providing Keith the information she had concerning his biological father during the course of this litigation. Diane maintains that Bernard's intent was for Keith to have this information, that the 60-day time period was immaterial, and that it would have been impossible for Diane to strictly comply with the condition given her uncertainty about the identity of Keith's biological father and all of the surrounding circumstances.

Although it is true that a court's "sole objective" when resolving a dispute over the meaning of language in a trust is to "ascertain and give effect to the intent of the settlor," *In re Kostin*, 278 Mich App 47, 53; 748 NW2d 583 (2008), the settlor's intent "is gauged from the trust document itself[] unless there is ambiguity," *id*. "The powers and duties of the trustees, and the settlor's intent regarding the purpose of the trust's creation and its operation, are determined by examining the trust instrument." *Id*. It is only when an ambiguity exists that the court looks "outside the document in order to carry out the settlor's intent, and may consider the circumstances surrounding the creation of the document and the general rules of construction." *Id*. "Where there is no patent or latent ambiguity in the provisions of a will, the intention to be ascribed to the testator is that intention demonstrated in the will's plain language." *In re Estate of Reisman*, 266 Mich App at 527 (quotation marks and citation omitted). "The rules of construction applicable to wills also apply to the interpretation of trust documents." *Id*.

Accordingly, the starting point of analysis must be the language of the Third Amendment and whether any ambiguity exists. If there is no ambiguity, then the trust amendment language controls. *In re Kostin*, 278 Mich App at 53; *In re Estate of Reisman*, 266 Mich App at 527.

Here, the Third Amendment provides that "if DIANE TENEROWICZ does not take the Required Action (as defined below), then all beneficial interests, powers and rights of every kind and nature which she otherwise has under this Agreement shall be forfeited . . . ." The Third Amendment defines "Required Action" to mean "(1) informing her son, KEITH BOUTET, as to whom his biological father was, within sixty (60) days after the death of Settlor; and (2) taking all actions reasonably necessary to provide scientific evidence (including DNA) of the biological

-5-

fatherhood, including the taking of any medical examinations or testing." This language unambiguously requires Diane to perform at least the first action—informing Keith of his biological father's identity—within 60 days of Bernard's death. There is no dispute that Diane did not provide *any* information about Keith's biological father to Keith within 60 days of Bernard's death. She did not even communicate to him within that timeframe that she knew that his father was one of two potential individuals.[7]

Because the language of the Third Amendment is clear and unambiguous, the language reflects Bernard's intent as a matter of law. *In re Kostin*, 278 Mich App at 53; *In re Estate of Reisman*, 266 Mich App at 527. Diane failed to satisfy the terms of the Third Amendment and thereby forfeited her share of the Trust. *In re Kostin*, 278 Mich App at 53; *In re Estate of Reisman*, 266 Mich App at 527.

To the extent Diane seems to claim that she was somehow excused from timely performing the required condition because there was allegedly a question as to the enforceability of the provision in the Third Amendment, Diane has not provided any cogent and legally supported basis on which the amendment could actually have been found unenforceable. In fact, such conditions on a testamentary gift are generally enforceable, as explained by the Iowa Supreme Court, quoted with approval by the Michigan Supreme Court in *Schiffer v Brenton*, 247 Mich 512, 517-518; 226 NW 253 (1929):

> For ourselves we can not believe that public interests are in any manner prejudiced or the fundamental rights of any individual citizen in any manner violated by upholding a gift or bequest made . . . upon c[o]ndition that he observe some specified line of personal conduct not in violation of law, or contrary to good morals. The donee is under no compulsion to accept the gift. He is free to elect. The question he has to decide is the ordinary one which arises in nearly every business transaction—whether the thing offered him is worthe the price demanded. The owner of property may give or refrain from giving. He may attach to his offer such lawful conditions as his reason, caprice, or malice may dictate, but he is dealing with his own, and the donee, who claims the benefit of the gift, must take it, if at all, upon the terms offered. [Quotation marks and citation omitted.]

Moreover, Diane never challenged the enforceability of the Required Action within the 60-day period, which would seem to have been the proper action to take to protect her entitlement to the gift under the trust if she thought it was not possible to comply with the condition due to circumstances of which Bernard was not aware when he executed the Third Amendment. Cf. *La Fond v City of Detroit*, 357 Mich 362, 363-365; 98 NW2d 530 (1959) (opinion by KELLY, J.) (involving a dispute over the validity of a will provision giving the residuary of the estate to the City of Detroit to create "a playfield for white children," where heirs of the deceased filed an action

---

[7] Accordingly, there is no need to decide whether providing this information in a timely manner would have satisfied the condition of the Third Amendment. Although Diane attempts to argue about whether certain types of actions would have satisfied the condition, the bottom line is that Diane did not have *any* communication with Keith during the 60-day time period regarding his biological father.

to construe the residuary clause as void and the City contended that it could accept the bequest and instead create a playfield for all children). The fact that she did not know which individual was actually Keith's biological father when she first learned of the Third Amendment does not mean that it would have been impossible for her to take the steps that she subsequently took to attempt to figure out the answer. Diane mischaracterizes the factual record by claiming that her lack of definitive knowledge on the issue of Keith's paternity, coupled with her total failure to take *any* action regarding the matter within 60 days of Bernard's death is a result of "impossibility." Difficult is not the same as "impossible."

This conclusion is supported by our Supreme Court's decision in *In re Erickson's Estate*, 346 Mich 432; 78 NW2d 256 (1956). In that case, the testator included a provision in his will devising the remainder of his estate to his "beloved daughter, Edna Erickson Olson, and [the testator's] beloved son-in-law, Einer Olson, jointly, as husband and wife, provided, however, and this devise and bequest is upon the express condition, that my said daughter and son-in-law shall legally adopt, either before my decease or within one year thereafter, a boy and a girl of the age of three years or under, providing they have no child or children of their own during said periods." *Id*. at 434. The will further provided for a smaller gift to the couple if the condition was not fulfilled. *Id*. When the testator died, his daughter and son-in-law were over 50 years old and had one adopted son. *Id*. at 435. They first learned of the provision in the will a few days after the testator's death, after which they immediately began contacting adoption agencies. *Id*. The couple was unsuccessful in adopting a girl as required by the will. *Id*. They argued in the probate court that the will provision was "void because of the impossibility of performance." *Id*.

Our Supreme Court upheld the validity of the will provision, holding that it created a condition precedent that had to be satisfied before the devise would vest with the testator's daughter and son-in-law. *Id*. at 437-438. The Court reasoned:

> In the case at bar testator was not under any legal obligation to provide anything for his daughter and he had a right to attach to a gift in his will any lawful terms or conditions he saw fit. Courts do not make wills by substituting their judgment for that of the testator. In *In re Kramer's Estate*, 324 Mich 626, 635; 37 NW2d 564, 567 [1949], we said:
>
> '* * * it is not the province of the court of jury to substitute its judgment for that of the testator, or to correct a seeming injustice. So long as the testator was of sound mind and expressed her own desires in the instrument, she was at liberty to make whatever disposition she chose.' [*In re Erickson's Estate*, 346 Mich at 436 (omission in original).]

The Court in *In re Erickson's Estate* also rejected the couple's arguments that they had "substantially performed the conditions stated in the will by the adoption of a boy, and that the conditions [were] impossible of performance." *Id*. at 438. The Court cited its opinion in *Johnson v Warren*, 74 Mich 491; 42 NW 74 (1889), and quoted the following language from that opinion:

> "The fact that the conditional beneficiary is not in fault for non-performance can make no difference. In the present case he could not have chosen for himself. The entire condition was to be performed during his legal incapacity; and when the

-7-

condition is one of fact, and not left open to option or contingency, it makes no difference why it is not performed, when the only right that the devisee has to receive any bounty from the estate is found in the words of the will." [*In re Erickson's Estate*, 346 Mich at 436-437, quoting *Johnson*, 74 Mich at 497.][8]

Here, Diane's mere assertion that the condition is of questionable enforceability does not make it so. Diane never took any action to assert this theory until well after the 60-day period had expired. On a related note and contrary to Diane's argument on appeal, the probate court's ruling that it was reasonable for Kiriazis to petition the court for instructions because the Third Amendment provision was "questionably invalid" does not conflict with the probate court's ruling that Diane forfeited her share.[9] Diane theoretically could have petitioned the probate court to

---

[8] Diane argues in her reply brief that *In re Erickson's Estate* has been abrogated by the passage of the Estates and Protected Individuals Code (EPIC), MCL 700.1101, *et seq.*, because MCL 700.7404 requires the purpose of a trust to be "possible to achieve" and MCL 700.7414 allows judicial modification of a trust if, in the words of Diane's counsel, "its terms are impracticable or if circumstances turn out differently than the settlor anticipated." As an initial matter, it is not clear that either of these statutes conflict with the Supreme Court's holding or analysis in *In re Erickson's Estate*. In that case, the condition precedent was difficult, but not absolutely impossible, to satisfy under those circumstances; it is possible to hypothesize realistic circumstances under which the condition could have been satisfied and, furthermore, the condition precedent did not involve the entire "purpose" of the trust, which is more properly the focus of MCL 700.7404. That statute states, "A trust may be created only to the extent its purposes are lawful, not contrary to public policy, and possible to achieve." MCL 700.7404. Furthermore, MCL 700.7414 is not nearly as broad as Diane's counsel contends; that statute involves situations where the total value of the trust is "insufficient to justify the cost of administration." See MCL 700.7414(1) and (2).

Our Supreme Court has not overruled *In re Erickson's Estate*, and the statutes cited by Diane's counsel do not supersede that decision. Thus, *In re Erickson's Estate* remains binding precedent. *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192; 880 NW2d 765 (2016) ("The Court of Appeals is bound to follow decisions by this Court except where those decisions have *clearly* been overruled or superseded *and is not authorized to anticipatorily ignore our decisions where it determines that the foundations of a Supreme Court decision have been undermined.*").

[9] With respect to the breach of fiduciary duty issue, the court determined that Kiriazis satisfied his fiduciary duties. The court reasoned in relevant part as follows:

> [Kiriazis] notified Diante T. about the third amendment shortly after Bernard's death. This would have given Diane T. enough time to obtain counsel and protect her interests. All the Trust assets have been distributed except for Diane T's share.

-8-

construe the Third Amendment within 60 days of Bernard's death.[10] See generally, e.g, MCL 700.1302(b)(*v*) (discussing proceedings to "[d]etermine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust"); MCL 700.7203 (indicating that such proceedings may be brought by a trust beneficiary). However, she did *nothing* within 60 days of Bernard's death, and that is the reason she forfeited her share.

To the extent she asserts that she was entitled to rely on Kiriazis's instructions to wait for further instructions from him, Diane has not cited any authority to support this contention and has thereby abandoned it on appeal. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *In re Temple Marital Trust*, 278 Mich App at 139. Diane's appellate argument ignores the reality that if she thought the probate court needed to rule on the construction of the Third Amendment language, then she should have timely sought such a ruling; she instead chose to do nothing.

Finally, relying on *Pavella v Miller*, 239 Mich 88; 214 NW 102 (1927), Diane argues that the probate court should have ordered specific performance of the condition rather than forfeiture. However, this reliance is misplaced. *Pavella*, involved a dispute concerning a land contract; there was no will or trust involved. *Id*. at 89. It is wholly inapplicable to the instant matter.

Affirmed. No costs are awarded. MCR 7.219(A).

/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

---

Before distributing Diane T's share, [Kiriazis] petitioned this court seeking instruction as to the validity of the required action stated in the third amendment that he drafted at the request of Bernard. Given the highly unusual language in the third amendment, a trustee would be expected to petition the court for instructions. In this case, the required action was questionably invalid because it may have been found to be against public policy. Based on this, [Kiriazis] has met the standards set forth in the statute and in the Trust.

[10] Whether this would have triggered the no-contest clause in the Second Amendment of the Trust is a question that this Court need not address because it is not before us at this juncture. It seems that a plausible argument could at least be made that timely seeking instructions on how to proceed so as to comply with the provision, in light of information of which Bernard was not aware, would not constitute a challenge to the trust that would implicate the no-contest provision. Moreover, under MCL 700.7113, "A provision in a trust that purports to penalize an interested person for contesting the trust or instituting another proceeding relating to the trust shall not be given effect if probable cause exists for instituting a proceeding contesting the trust or another proceeding relating to the trust."